### A01A1906. KIRKLAND v. THE STATE.
(559 SE2d 161)

MIKELL, Judge.

Stephen Lee Kirkland was convicted of driving under the influence of alcohol ("DUI") by having an alcohol concentration of 0.10 grams or more, OCGA § 40-6-391 (a) (5), and of exceeding the maximum posted speed limit, OCGA § 40-6-181. He was acquitted of DUI to the extent that he was a less safe driver, OCGA § 40-6-391 (a) (1). He was sentenced to twelve months on probation with the first thirty days to be served in work release, eighty hours of community service, and two fines in the total amount of $1,200. The trial court denied his motion for new trial, and this appeal followed. Kirkland's sole enumerated error is that the court erred in permitting a police officer to testify as to his opinion of what the six clues of the horizontal gaze nystagmus ("HGN") test indicate about a person's level of intoxication. We affirm the conviction.

Viewed in the light most favorable to the jury's verdict, the record shows that on May 14, 1999, at approximately 4:39 a.m., Officer Jack W. Moody of the Gwinnett County Police Department stopped the car Kirkland was driving for speeding. Kirkland produced his driver's license, but he told the officer that the car was not his and that he could not find an insurance card. Officer Moody testified that Kirkland's eyes appeared bloodshot and glazed, and that his breath smelled of alcohol. Officer Moody directed Kirkland to per-

form field sobriety evaluations. First, the officer asked Kirkland to recite the alphabet, and Kirkland complied. Next, Officer Moody administered the HGN test. The officer testified that Kirkland exhibited all six clues indicating that he was intoxicated. He further testified that based on his training and vast experience in DUI investigation, it was his opinion that generally when a person exhibits all six clues, that person's blood alcohol concentration would likely be 0.10 grams or greater.

Officer Moody asked Kirkland to perform the walk and turn and the one-leg stand evaluations, but Kirkland complained of a knee problem. Consequently, Officer Moody did not require Kirkland to perform those evaluations but attempted to administer an alcosensor test. Kirkland refused to supply a breath sample. Officer Moody testified that based on his observation of Kirkland, the odor of alcohol from Kirkland's breath, and Kirkland's performance on the field sobriety evaluations, he believed that the defendant was a less safe driver due to his level of intoxication. The officer arrested Kirkland for DUI and immediately read him the Georgia Implied Consent Notice. Kirkland then consented to a breath test.

Officer Moody took Kirkland to the Gwinnett County jail. He administered a breath test using the Intoxilyzer 5000. The first breath sample, taken at 5:22 a.m., indicated a blood alcohol concentration of 0.124 grams, and a second sample at 5:25 a.m. showed a concentration of 0.127 grams. The jury convicted Kirkland of DUI with an alcohol concentration of 0.10 grams or more and of speeding. On appeal, Kirkland argues that the court erred in allowing Officer Moody to testify regarding his opinion of the level of intoxication the HGN test indicates. We disagree.

The trial transcript shows that the state asked Officer Moody the following question:

> Now I'm asking you based on everything — your training, your on-the-job evaluations of folks who have consumed alcohol, DUI detection and what you've observed on people, their physical manifestations with the eyes and so forth, the horizontal gaze nystagmus — what's your opinion as to the correlation of that and what you find out as a result of the Intox 5000 test?

Following a defense objection which was overruled, the court clarified the question as follows:

> He's asking do you have an opinion based on what you observed in the HGN and what you read on the Intoximeter[,] do you have an opinion as to how they correlate with one another. You said you had one. So now tell us what that is.

Officer Moody gave the following testimony:

> In general if you do the HGN evaluation and I denote six out of the six possible clues that I'm looking for, that does in my opinion correlate to a — to the numerical value that's placed on that person's alcohol — blood-alcohol content. . . . That, in general, when you see six out of six clues, the blood-alcohol content will be above a point one oh [0.10 grams] or greater.

The court then instructed the jury: "And, members of the jury, that's his opinion. You are to decide the ultimate question."

Contrary to Kirkland's argument, we conclude that the trial court did not err in allowing the above testimony. "[T]he HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996). Admissible evidence involving the HGN test is not limited to test results showing the mere presence of alcohol. *Sieveking v. State*, 220 Ga. App. 218, 219 (1) (469 SE2d 235) (1996).

> Field sobriety tests are not designed to detect the mere presence of alcohol in a person's system, but to produce information on the question whether alcohol is present at an impairing level such that the driver is less safe within the meaning of OCGA § 40-6-391 (a) (1). [Cits.] Mere presence of alcohol is not the issue; the quantity is needed because the issue is effect.

Id. See also *Werner v. State*, 246 Ga. App. 677, 679 (1) (538 SE2d 168) (2000).

Furthermore, we have held that police officers may give opinion testimony regarding the state of sobriety of a DUI suspect. *Wrigley v. State*, 248 Ga. App. 387, 392 (4) (546 SE2d 794) (2001). "And to the extent that such evidence represented expert testimony, it was within the trial court's discretion to determine whether Officer [Moody] possessed the requisite learning and experience to testify as an expert." Id. See also *Werner*, supra at 680 (3). The evidence showed that Officer Moody was specially trained in the area of DUI detection, had conducted over 1,000 field sobriety evaluations, and had conducted approximately 700 breath tests using the Intoxilyzer 5000. We find no error. See *Wrigley*, supra.

Additionally, the results of Kirkland's breath tests showing a blood alcohol concentration of at least 0.124 grams were admitted into evidence and provided independent support for the jury's deter-

mination that Kirkland was guilty of DUI by having an alcohol concentration of 0.10 grams or more, in violation of OCGA § 40-6-391 (a) (5). Accordingly, we affirm the conviction.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 24, 2002.

*W. Keith Davidson*, for appellant.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Emilien O. Loiselle, Jr., Assistant Solicitors-General*, for appellee.