## A04A0874. GRINSTEAD v. THE STATE.
### (605 SE2d 417)

ADAMS, Judge.

William Jason Grinstead appeals the revocation of his first offender status and related probation arising out of a charge of possession of cocaine. Revocation was based on new allegations that he violated his probation by possessing firearms and testing positive for methamphetamine and morphine. He contends that the trial court abused its discretion by allowing the results of an unproven test that was used to show that he had the two drugs in his system. He also

---

contends that without evidence of drug use, the court's determination that he had used proscribed substances was erroneous.

Construed in favor of the trial court's ruling, the evidence shows that in February 2001, Grinstead pleaded guilty to possession of cocaine and was placed on probation for three years under the first offender law. See OCGA § 42-8-60. In October 2003, a petition for revocation was filed based on allegations that Grinstead violated the conditions of his probation by possessing ammunition and by testing positive for illegal drugs in violation of a special condition. At the revocation hearing, Grinstead's probation officer testified that Grinstead was found to be in possession of four types of ammunition and that Grinstead tested positive for methamphetamine and morphine.

Grinstead objected to the latter evidence on the ground that the state failed to offer a foundation for introducing any drug test results and on the ground that the probation officer was not qualified to present that information. In colloquy, counsel for the state and the defendant discussed the test as if it were the same one at issue in *Cheatwood v. State*, 248 Ga. App. 617 (548 SE2d 384) (2001). In *Cheatwood*, the trial court heard evidence by one expert that, based on his past studies of different on-site testing devices, in his opinion the "Roche Diagnostic Corporation's 'OnTrack TesTstik' drug test . . . was 100 percent reliable for testing marijuana or cocaine." Id. at 618. Grinstead also objected on the ground that *Cheatwood* was inapplicable. The trial court reviewed *Cheatwood* and decided that the evidence was admissible. Prior to the court's ruling, the probation officer had not yet identified the specific test that he used.

Subsequently, on cross-examination, the probation officer testified that he used a Roche Systems, Inc. "On Track" drug test. Cross-examination also established that the officer did not have the expertise necessary to testify to the accuracy of the test nor could he assure that it did not give false readings in the presence of prescription drugs or cold remedies. Grinstead testified that he was taking one of each at the time of the incident.

Based on the testimony, the trial court found that Grinstead had violated the terms of his probation by possessing the ammunition and by testing positive for methamphetamine and morphine. The court then adjudicated Grinstead guilty on his earlier first-offender guilty plea and sentenced him to ten years, to serve five, with credit for time served. Following the decision, counsel for Grinstead asked the court, "[H]ad it not been for the drug evidence, or the test results, would it be fair to say, or me to infer, that your sentence may have been less?" The court replied, "I don't know, probably."

1. Whether the trial court abused its discretion by admitting the drug test results is governed by the Supreme Court's decision in *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982), and case law

following that decision. In *Harper*, the Supreme Court held that it is proper for the trial judge to decide whether a scientific procedure or technique has reached a scientific stage of verifiable certainty such that it may be admitted into evidence, without taking specific evidence regarding the reliability of the procedure. Id. at 525-526. To make this determination the trial court may hear evidence, including expert testimony, or "the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions." Id.

But, as noted in *Harper*, in order for a trial court to rely on other case law, a substantial number of cases is required that show other courts recognizing the scientific procedure or technique:

> Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature.

Id. at 526. "In other words, once a procedure has been utilized for a significant period of time, and expert testimony has been received thereon in case after case, the trial court does not have to keep reinventing the wheel; a once novel technology can and does become commonplace." *Hawkins v. State*, 223 Ga. App. 34, 36 (476 SE2d 803) (1996) (horizontal gaze nystagmus testing has been accepted in a substantial number of Georgia courts for a substantial number of years).[1]

In this case, the trial court relied on only one case, *Cheatwood*. One case is not enough. See *Izer v. State*, 236 Ga. App. 282, 283 (511 SE2d 625) (1999) ("Although [four] courts have accepted [speed-detecting] laser evidence, in some cases only with expert testimony, it cannot be said that a *substantial* number of courts have recognized the technique.") (emphasis in original), superseded by statute as stated in *Van Nort v. State*, 250 Ga. App. 7 (550 SE2d 111) (2001) (speed-detecting device admissible under OCGA § 40-14-17).

Furthermore, we have other concerns about the trial court's reliance on *Cheatwood* for the proposition that the test employed in this case is a procedure that has been established with verifiable certainty. First, it is not completely clear that the same test was used

---

[1] See also *Al Amin v. State*, 278 Ga. 74, 81-82 (11) (597 SE2d 332) (2004) (firearms/ballistic/tool marks evidence is not novel, and has been widely accepted in Georgia courts and other jurisdictions); *Pace v. State*, 271 Ga. 829, 839-840 (524 SE2d 490) (1999) (hair comparison evidence is not novel and has been widely accepted in Georgia courts); *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991) (radar as a technique for measuring speed and its admissibility as scientific evidence is widely accepted in Georgia and other states).

in *Cheatwood*. In that case, this Court considered a test described as "Roche Diagnostic Corporation's 'OnTrack TesTstik' drug test." In the present case, the probation officer testified that he used a "Roche Systems, Inc. 'On Track' drug test." A review of case law from around the nation shows that more than one company with "Roche" in the name have tests with similar but not exactly the same names. See, e.g., *Anderson v. McKune*, 937 P2d 16, 18 (Kan. App. 1997) ("Roche Abuscreen On-Trak drug test (ONTRAK)"); *Eure v. Miller*, 1996 WL 673965 (E.D. La. 1996) ("ONTRAK Rapid Assay test for THC manufactured by Roche Laboratories"); *Crutchfield v. Hannigan*, 906 P2d 184, 186 (Kan. App. 1995) ("Roche Abuscreen On-Trak drug tests"). It seems obvious to this Court that in order for a judge to take judicial notice that a scientific procedure or technique has reached a scientific stage of verifiable certainty, it is necessary to specifically establish what test has been given.

Next, *Cheatwood* addressed whether the test could be used to indicate the presence of marijuana and cocaine. *Cheatwood*, 248 Ga. App. at 618-619. In the present case, the test was used to indicate morphine and methamphetamine. Although the expert who testified in *Cheatwood* mentioned methamphetamine in his testimony, the trial court in that case was not required to decide whether to admit that evidence because it was not relevant. Thus, *Cheatwood* is not conclusive with regard to whether the drug test is reliable for methamphetamine and it fails to address morphine entirely.

Finally, we find one case from another jurisdiction involving a Roche drug test that gave a false positive for methamphetamine because the person tested had over-the-counter cold medication in his system. *Willis v. Roche Biomedical Laboratories*, 61 F3d 313 (5th Cir. 1995). There is no indication in *Cheatwood* of whether the expert in that case ever addressed the possible impact of other drugs on the outcome of the test, an issue directly relevant to the facts of this case.

In short, we conclude that the trial court abused its discretion by admitting the drug testing evidence based solely on one Georgia case of questionable relevance.

2. The next question is whether this error alters the result. Grinstead has not challenged the court's finding that he violated his first offender probation by possessing ammunition.[2] It is the general rule that if some of the allegations regarding revocation are sustainable, the revocation decision will be affirmed. *Couch v. State*, 246 Ga. App. 106, 107 (539 SE2d 609) (2000). But here, the trial court's own comments, as noted above, suggest that the court may have given a

---

[2] It is also unclear from the record exactly how possession of ammunition constituted a violation of Grinstead's probation, but again, that issue was not raised in this appeal.

lesser sentence but for the drug evidence. We must determine whether the court's statement makes a meaningful difference.

Upon violation of his first offender status, Grinstead was subject to being adjudicated guilty of the original crime, possession of cocaine, and sentenced for that crime. See OCGA § 42-8-60 (b). The court may impose any sentence permitted by law for the offense the probationer has been found guilty of committing, provided that the sentence may only exceed the original first offender sentence if the accused was informed of that eventuality at the time the first offender probation sentence was pronounced. *Roland v. Meadows*, 273 Ga. 857, 858-859 (548 SE2d 289) (2001).[3] At the hearing on his first offender status, the court told Grinstead that if he violated the terms of his probation he would be subject to the maximum sentence of 15 years for the crime and be required to serve that time in jail. Accordingly, setting aside the trial court's comments, Grinstead's sentence of ten years, to serve five, with credit for time served was proper under the law.

But, within the above guidelines, the sentence to be imposed upon revocation of the first offender status is a matter of discretion. See *Camaron v. State*, 246 Ga. App. 80, 82 (539 SE2d 577) (2000). Given the trial court's statement in this case that it probably would have imposed a lesser sentence but for the drug evidence, we cannot say that the trial court did not abuse its discretion. Accordingly, we remand for resentencing.

*Judgment affirmed. Sentence vacated and case remanded for resentencing. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 1, 2004.

*Charles A. Aultman*, for appellant.
*Kelly R. Burke, District Attorney, Amy E. Smith, Katherine K. Lumsden, Assistant District Attorneys*, for appellee.

---

[3] Also, any time spent on probation prior to an adjudication of guilt must be credited to any new sentence received. *Roland v. Meadows*, 273 Ga. 857, 858-859 (548 SE2d 289) (2001).