## A05A2335. WEBB v. THE STATE.
(626 SE2d 545)

MIKELL, Judge.

A Hall County jury found Allison Webb guilty of driving under the influence of alcohol to the extent that it was less safe to drive, OCGA § 40-6-391 (a) (1), and speeding, OCGA § 40-6-181. On appeal, Webb contends that the trial court erred in allowing numerical value evidence of her blood alcohol level in a "less safe" DUI case. We affirm because the trial court did not abuse its discretion in allowing the evidence.

Viewed in a light most favorable to the jury's verdict, the evidence shows that on January 22, 2005, a Hall County deputy saw a car which he estimated by sight to be traveling 65 miles per hour in a 45 miles per hour zone. After his radar confirmed the car was traveling 62 miles per hour, the deputy stopped the car and approached its driver, Webb. The deputy smelled a strong odor of an alcoholic beverage coming from the car. Webb searched her purse for a few minutes before producing her driver's license.

After Webb found her license, the officer asked her to step out of the car, and the deputy noticed that she seemed unsteady on her feet. Webb agreed to take a field sobriety test. The officer performed a horizontal gaze nystagmus (HGN) test on which Webb exhibited six out of six possible clues. After Webb completed the HGN test, the deputy decided not to ask her to perform the walk and turn test and the one leg stand test because he could not demonstrate the tests himself under the weather conditions. The deputy then asked Webb to blow into an alco-sensor, which showed positive for the presence of alcohol. The deputy placed Webb under arrest and read to her the implied consent warning for individuals over 21. She refused to take a state-administered chemical test of her blood alcohol level.

The solicitor-general accused Webb of driving under the influence to the extent it was less safe to drive, and speeding. Before trial, Webb filed a motion in limine in which she asked for an order prohibiting the state from introducing into evidence an estimate of her blood alcohol level based upon her HGN test. In the motion, Webb contended that because she was only charged with "less safe" DUI that numerical evidence of her blood alcohol level was irrelevant unless the state showed she was impaired at that level. After a hearing, the

trial court denied the motion, concluding that "simply the fact that it is a numerical score in and of itself" was an insufficient reason for excluding the evidence.

At trial, the arresting deputy testified that in administering the HGN test that "[s]ix out of six clues indicate to me that I have a blood/alcohol concentration. Four out of six per my training says there's a seventy-four percent chance that I have a blood/alcohol concentration of above .10 grams." Webb objected, noting that "[t]his case does not involve per se alcohol issues." The trial court overruled the objection. The deputy further testified that based on his training and experience, Webb had been under the influence of alcohol to the extent that she was a less safe driver. The jury returned a verdict of guilty on the speeding and DUI charges.

Webb now appeals her DUI conviction, claiming that the trial court erred by allowing the deputy to testify as to the numerical blood alcohol level shown by the results of her HGN test.[1] More specifically, Webb claims that the trial court erred in admitting this evidence because it was irrelevant. She also contends that the trial court improperly allowed an amendment of the accusation, that there was a "fatal variance" between the accusation and the evidence offered at trial, and that the blood alcohol level evidence was not admissible absent the testimony of an expert witness to explain the significance of the numerical result.

1. Webb argues that evidence of her numerical blood alcohol level was irrelevant because it was insufficient to show that she was less safe to drive, that the evidence's probative value, if any, was outweighed by unfair prejudice, and that the evidence "is irrelevant under *Evans v. State*, 253 Ga. App. 71 (558 SE2d 51) (2001)." We disagree.

The admission of evidence is within the sound discretion of the trial court, and we will not disturb the trial court's evidentiary decisions on appeal absent an abuse of discretion. See *Smith v. State*, 265 Ga. App. 236, 238 (4) (593 SE2d 695) (2004). "Unless the potential for prejudice substantially outweighs probative value, Georgia law favors the admission of relevant evidence, no matter how slight its probative value." (Punctuation and footnote omitted.) *State v. Adams*, 270 Ga. App. 878, 881 (2) (609 SE2d 378) (2004). Evidence is relevant if it tends to prove or to disprove a material fact at issue, and every act

---

[1] Webb failed to include a separate part in her brief consisting of the enumerations of error, as required by our Rule 25 (a) (2), and although she refers to the separate sections within her "Argument and Citation to Authority" as the enumerations of error, these sections are better characterized as arguments rather than a concise and separate identification of each error relied upon. See OCGA § 5-6-40. However, because it is apparent to us what errors Webb seeks to assert on appeal, we will consider the appeal in accordance with OCGA § 5-6-48 (f).

or circumstance which serves to explain or throw light upon a material issue is relevant. See *Sailor v. State*, 265 Ga. App. 645, 648 (2) (595 SE2d 335) (2004).

"The crime of driving while under the influence to the extent that it is less safe to drive requires showing three elements: (1) driving, (2) under the influence of alcohol, (3) to the extent that it is less safe for the person to drive." (Footnote omitted.) *Shaheed v. State*, 270 Ga. App. 709, 710 (1) (607 SE2d 897) (2004). The numerical evidence of Webb's blood alcohol level was probative of the latter two elements because the evidence directly addressed whether Webb was "under the influence," and her blood alcohol level shed light on whether she was less safe to drive.

> Field sobriety tests are not designed to detect the mere presence of alcohol in a person's system, but to produce information on the question whether alcohol is present at an impairing level such that the driver is less safe within the meaning of OCGA § 40-6-391 (a) (1). Mere presence of alcohol is not the issue; the quantity is needed because the issue is effect.

(Citations omitted.) *Kirkland v. State*, 253 Ga. App. 414, 416 (559 SE2d 161) (2002) (concluding that trial court did not err in admitting officer's opinion testimony that six of six clues on defendant's HGN test indicated blood alcohol content of 0.10 grams or greater). See also *Werner v. State*, 246 Ga. App. 677, 678-679 (1) (538 SE2d 168) (2000) (testimony regarding the HGN sobriety test, which included a numerical estimate of defendant's blood alcohol level, would have been admissible if defendant had preserved his objection); *Sieveking v. State*, 220 Ga. App. 218-219 (1) (469 SE2d 235) (1996) (admissible evidence involving the HGN test is not limited to test results showing the presence of alcohol).

Although the evidence of Webb's blood alcohol level was probative of the "less safe" DUI charge, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." (Punctuation and footnote omitted.) *Ross v. State*, 279 Ga. 365, 366 (2) (614 SE2d 31) (2005). However, we find nothing inherently inflammatory about the blood alcohol evidence and can discern no reason why the jury was not capable of evaluating the evidence in the context of the "less safe" DUI accusation. Therefore, we conclude that the trial court did not abuse its discretion by failing to exclude the numerical blood alcohol evidence because the evidence was probative and its probative value was not outweighed by the possibility of undue prejudice.

Webb argues that cases such as *Werner*, supra, and *Sieveking*, supra, which suggest that the quantity of a defendant's blood alcohol level may be admissible in a "less safe" DUI case, are distinguishable. She contends that those cases were decided under previous law providing that a driver was presumed to be under the influence of alcohol if his or her blood alcohol concentration was 0.08 or more grams; that there is no such presumption under the law applicable here; and that the blood alcohol evidence in this case was not relevant in the absence of the statutory presumption.[2] We cannot accept Webb's argument that evidence of a defendant's blood alcohol level is relevant only if the state is attempting to establish a statutory presumption that the defendant was less safe to drive. In *Bowden v. State*, 202 Ga. App. 802 (415 SE2d 527) (1992), a case where the evidence of the defendant's blood alcohol level of 0.06 grams did not give rise to presumption that he was under the influence for purposes of an accusation of "less safe" DUI, we noted that "[a] blood-alcohol level greater than .06 might not render one individual a less safe driver, whereas a blood-alcohol level below .06 might render another individual a less safe driver." Id. at 803 (2). Nevertheless, the court noted that the defendant's blood alcohol level was "but one factor to be considered by the jury in making that determination." (Emphasis omitted.) Id. at 804 (2). Similarly, the numerical evidence of Webb's blood alcohol level was one factor which could be considered by the jury in determining if Webb was less safe to drive.

Webb further relies on *Evans*, supra, for the proposition that evidence of her blood alcohol level was irrelevant. Evans was charged with "less safe" DUI after he refused to take the state-administered blood alcohol test. Id. at 75-76 (2) (a). On appeal, Evans claimed that the trial court erred by excluding testimony by the defendant's expert witness as to Evans's blood alcohol level. We concluded that the trial court did not err in excluding the testimony because (i) there was no factual basis for calculating Evans's blood alcohol level using the

---

[2] Under previous law, the level of blood alcohol content shown by the chemical analysis of a defendant's blood for purposes of OCGA § 40-6-392 gave rise to certain statutory presumptions as to whether the defendant was under the influence of alcohol to the extent he or she was less safe to drive. For instance, if chemical analysis showed an alcohol concentration of 0.05 grams or less, then it was presumed that the defendant was not under the influence of alcohol, but if chemical analysis showed an alcohol concentration of 0.08 grams or more the defendant was presumed to be under the influence of alcohol. Ga. L. 1991, p. 1886, § 10. Under current law, a trier of fact is authorized to presume that if chemical analysis shows that a driver had an alcohol concentration of 0.05 grams or less, then the driver was not under the influence of alcohol, but there is no presumption if chemical analysis shows a blood alcohol concentration of 0.08 grams or more, as the driver is in violation of the "per se" DUI statute. See OCGA § 40-6-392 (c) (1).

By addressing Webb's argument, we do not wish to intimate that Webb's HGN test was a chemical analysis of her blood for purposes of OCGA § 40-6-392.

"Widmark formula," which was the method used by the expert, id. at 77 (2) (b), (ii) the Widmark formula failed to rise to the level of verifiable certainty and reliable results required to make the procedure admissible, id. at 77-78 (2) (c), and (iii) the evidence was not relevant. Id. at 75-77 (2) (a). The relevancy analysis in *Evans*, however, focused on the danger of unfair prejudice to the state if Evans could introduce evidence of his blood alcohol level in an effort to take advantage of the statutory inferences related to blood alcohol content denied to the state by his refusal to take the state-administered test. "A refusal to submit to chemical testing makes inferences related to blood alcohol content irrelevant, since the State must prove only that the defendant was less safe to drive, regardless of his or her blood alcohol content." Id. at 77 (2) (a). It does not necessarily follow that if a refusal to submit to chemical testing makes the statutory inferences irrelevant that a defendant's blood alcohol content is always irrelevant in a "less safe" DUI prosecution, especially in light of a trial court's discretion in considering whether to admit evidence. Therefore, we decline to interpret *Evans* as requiring that we find the trial court erred by admitting numerical evidence of Webb's blood alcohol content over an irrelevancy objection.[3]

2. Webb further contends that the trial court's decision to allow the disputed evidence effected an amendment to the accusation which could properly be done only before trial, see OCGA § 17-7-71 (f), and that the accusation as written failed to place her on notice that she was charged with anything other than "less safe" DUI under OCGA § 40-6-391 (a) (1), resulting in a fatal variance between the allegations and the proof presented at trial. We disagree.

Webb does not show she raised the fatal variance issue with the trial court, and this issue is waived. See *Jackson v. State*, 252 Ga. App. 16-17 (2) (555 SE2d 240) (2001) (defendant waived "fatal variance" issue on appeal by failing to raise it with the trial court). Even if Webb had raised the issue with the trial court, it has no merit. "The fatal variance rule requires that: the allegations definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and the allegations must be adequate to protect the accused against another prosecution for

---

[3] We do not wish to imply that a trial court must always admit numerical evidence of a defendant's blood alcohol content adduced by an HGN test. Webb's motion in limine and in-trial objection was based on relevancy. The HGN test is a procedure "that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." (Citation and punctuation omitted.) *Kirkland*, supra at 416. It may be an open question, however, whether the HGN test has reached a state of verifiable certainty in the scientific community as a basis for determining the numerical level of a driver's blood alcohol level.

the same offense." (Citation and punctuation omitted.) *Rubaldino v. State*, 271 Ga. App. 726, 728 (1) (611 SE2d 68) (2005). The solicitor-general accused Webb of driving a moving vehicle on January 22, 2005, while she was under the influence of alcohol to the extent that it was less safe for her to drive. The proof at trial was consistent with this charge.

Webb did object on the grounds that the trial court had improperly allowed the state to amend the accusation after the commencement of trial. Webb argues that an effective amendment is shown by the introduction of the numerical blood alcohol level evidence, which we infer as an argument that the trial court improperly allowed the state to prosecute her for a "per se" DUI violation. Inasmuch as the blood alcohol evidence was properly admitted as probative of the "less safe" DUI charge, Webb was convicted of that charge, and Webb raises no other point other than the admission of the evidence, we fail to see how the trial court erred by allowing the state to effectively amend the accusation.

3. Finally, Webb claims that the admission of her numerical blood alcohol level requires reversal because the state did not offer expert testimony or other evidence to relate her numerical score to the issue of impairment. She argues that without placing the numerical score in context that the jury was invited to speculate that she was less safe to drive because her blood alcohol level was at or above a certain number. Again, we disagree. Webb is essentially recasting her relevancy argument by claiming that additional testimony was required to make the test results relevant, and that otherwise the results were irrelevant. In any event, the state did offer the opinion of the arresting officer that based on his experience, his training, and what he observed that evening, that Webb was less safe to drive. The HGN test results, including the test's indication of her numerical blood alcohol level, was part of the context in which the arresting officer reached this opinion.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2006 — ▮▮▮▮▮▮▮

*McDonald & Cody, Douglas W. McDonald, Jr.*, for appellant.

*Jerry Rylee, Solicitor-General, Jennifer L. Scalia, Larry A. Baldwin II, Assistant Solicitors-General*, for appellee.