## A10A0363. BRAVO v. THE STATE.
(696 SE2d 79)

DOYLE, Judge.

A Coweta County jury found William James Bravo guilty of driving under the influence of alcohol to the extent that it was less safe to drive ("DUI less safe")[1] and failure to maintain lane.[2] He appeals, arguing that (1) the trial court erred by denying his motion in limine to exclude the arresting officer's testimony regarding his estimate of Bravo's blood alcohol concentration ("BAC") based on a horizontal gaze nystagmus ("HGN") evaluation, and (2) trial coun-

---

sel was ineffective by failing to advise him of his right to testify at trial or to remain silent. We reverse, for reasons that follow.

> Because the trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.[3]

The evidence shows that on January 19, 2008, Coweta County Sheriff's Deputy James Nash observed the vehicle Bravo was driving weave across the roadway, crossing the centerline and the right fog line multiple times. Nash initiated a traffic stop. Bravo exited his vehicle, and the deputy advised him three times to get back in the car before Bravo complied. As he stood beside Bravo's car, Nash noted a strong odor of alcohol coming from inside the vehicle. Nash asked Bravo how much he had to drink, but Bravo did not respond, instead insisting that he was "just going home."

Bravo complied with Nash's request to exit the vehicle, but he had to use the driver's door and the car to support himself as he did so. The deputy smelled a "very strong" odor of an alcoholic beverage coming from Bravo's breath, and he noted that Bravo's eyes were glassy and bloodshot, his clothing was in disarray, and he was unsteady on his feet. An alco-sensor test detected the presence of alcohol on Bravo's breath. Nash performed an HGN test, which consisted of passing an object in front of Bravo's eyes horizontally and determining, based on an observation of the jerking movements, or nystagmus, of each eye, whether there was impairment. Bravo exhibited all six clues for intoxication on the HGN test. Based on the

---

[3] (Citations and punctuation omitted.) *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

HGN test and a vertical nystagmus test, Nash concluded that Bravo was under the influence of alcohol to an elevated extent. Although Bravo initially agreed to perform the straight line walk test, he then indicated that he could not do so nor could he perform the one-leg stand test because he had undergone knee surgery in the past. Nash then placed Bravo under arrest and read to him the implied consent warning for individuals over 21. Bravo refused to take a state-administered test of his BAC.

Bravo was charged with DUI less safe and failure to maintain lane. Before trial, he filed a motion in limine seeking to exclude any testimony from Nash regarding his opinion of Bravo's numeric BAC derived from the HGN test on the grounds that it was not based upon scientific evidence and was contrary to Nash's training. The trial court heard argument of counsel immediately before trial, but deferred ruling on the motion. During direct examination of Nash, the State tendered him as an expert in "DUI and alcohol detection," without objection from Bravo. Following a portion of Nash's testimony, the trial court denied Bravo's motion in limine. The trial court then gave the jury the pattern charge on expert testimony, at which time defense counsel objected to qualifying Nash as an expert in determining a precise numeric BAC based on HGN testing. Nash then testified that while performing the sixth clue of the HGN field test on Bravo, he estimated that Bravo's BAC was 0.25 grams based on a mathematical calculation that included Bravo's angle of onset of nystagmus. Nash further testified that based on his training, experience, and observations, he believed that Bravo was under the influence of alcohol to the extent he was a less safe driver.

Bravo did not testify, but he presented testimony from an employee of a restaurant who served him the night of his arrest. The employee testified that she served Bravo one shot and two beers over a two and a half hour period; when he left the restaurant, Bravo's speech was not slurred, his eyes were not glassy or bloodshot, he was not stumbling or staggering, and he gave her no indication that he was going to be an unsafe driver when he left the restaurant. Bravo also submitted the testimony of Larry Mitchell, a friend and former agent for the Federal Bureau of Investigation, who testified that Bravo spoke very slowly with a southern dialect. Mitchell also testified that Bravo had "blown out knees" that caused him to "wobble . . . side-to-side" when he walked and that Bravo had to hold onto something in order to stand up.

After initially indicating that it was unable to reach a unanimous verdict, the jury continued deliberating and found Bravo guilty on both counts. This appeal follows the trial court's denial of Bravo's motion for new trial.

1. Bravo argues that the trial court erred by denying his motion in limine to exclude Nash's opinion of his specific numeric BAC based on the HGN test he administered to Bravo. We agree.

In Georgia,

> testimony regarding a detainee's performance on an HGN test is considered a special kind of evidence, specifically, evidence based on a scientific principle or technique. The foundation for evidence based on a scientific principle or technique requires two findings regarding the evidence's reliability: such evidence is admissible upon a showing by the party offering the evidence that (1) the general scientific principles and techniques involved . . . are valid and capable of producing reliable results, and (2) the person performing the test substantially performed the scientific procedures in an acceptable manner.[4]

The trial judge should

> decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or . . . whether the procedure rests upon the laws of nature. The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions.[5]

However, "[o]nce a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature."[6]

Here, the trial court denied Bravo's motion in limine to exclude Nash's opinion regarding his specific BAC after reviewing case law, relying specifically on *Webb v. State*.[7] In *Webb*, the defendant appealed the denial of her motion in limine to exclude the arresting officer's testimony of her numeric BAC, which the officer based on an HGN test, arguing that the evidence was irrelevant because she was

---

[4] (Citations, punctuation and footnotes omitted.) Id. at 876 (1) (a).

[5] (Citation, punctuation and footnote omitted.) *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982).

[6] Id. at 526 (1).

[7] 277 Ga. App. 355 (626 SE2d 545) (2006).

charged with DUI less safe, not DUI per se.[8] This Court affirmed, holding that "the evidence of Webb's blood alcohol level was probative of the 'less safe' DUI charge."[9] The opinion is very clear, however, that Webb's objection to the evidence at issue was based on relevancy,[10] as opposed to the argument in the instant case, which is whether Nash's method of estimating a specific numeric BAC based on an HGN test can "be verified with such certainty that it is competent evidence in a court of law."[11] Indeed, as the trial court noted, the *Webb* decision specifically stated that

> [w]e do not wish to imply that a trial court must always admit numerical evidence of a defendant's blood alcohol content adduced by an HGN test. . . . The HGN test is a procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol. *It may be an open question, however, whether the HGN test has reached a state of verifiable certainty in the scientific community as a basis for determining the numerical level of a driver's blood alcohol level.*[12]

Thus, *Webb* does not stand for the proposition that the method of using an HGN test to establish a person's *specific numeric* BAC is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community. And the State has not cited to any other case, in Georgia or otherwise, that does so.[13] Certainly, it is well settled in Georgia "that the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible *as a basis upon which an*

---

[8] See id. at 358 (1).

[9] Id. at 357 (1).

[10] See id. at 359, n. 3.

[11] *Harper*, 249 Ga. App. at 524 (1).

[12] (Citation and punctuation omitted; emphasis supplied.) *Webb*, 277 Ga. App. at 359, n. 3.

[13] In fact, multiple other jurisdictions have concluded that although evidence of HGN tests may be admissible as evidence of alcohol consumption and impairment, it is not admissible to quantify a specific BAC. See, e.g., *State v. Shadden*, 199 P3d 167, 175 (Kan. Ct. App. 2009); *Brewer v. Ziegler*, 743 NW2d 391, 400 (VII) (N.D. 2007); *State v. Campoy*, 149 P3d 756, 759 (Ariz. Ct. App. 2006); *State v. Rose*, 86 SW3d 90, 100 (II) (B) (Mo. 2002); *State v. Dahood*, 814 A2d 159, 168 (IV) (D) (N.H. 2002); *State v. Baue*, 607 NW2d 191, 204 (4) (a) (Neb. 2000); *Wilson v. State*, 723 A2d 494, 499 (Md. Ct. Spec. App. 1999); *Ballard v. State*, 955 P2d 931, 940 (Alaska 1998), overruled on other grounds, *State v. Coon*, 974 P2d 386 (Alaska Ct. App. 1999); *Emerson v. State*, 880 SW2d 759, 769 (III) (b) (Tex. Crim. App. 1994); *State v. Bresson*, 554 NE2d 1330, 1336 (Ohio 1990); *People v. Dakuras*, 527 NE2d 163, 167 (Ill. App. Ct. 1988).

*officer can determine that a driver was impaired by alcohol.*"[14] And we have previously concluded that field sobriety tests, including the HGN, are admissible to show that a detainee's BAC exceeds a particular impairing level.[15] But the technique of using an HGN test to determine whether an individual is impaired by alcohol is not the same as the method that Nash employed here, which is to identify a specific numeric BAC (in this case, 0.25) based on an HGN. Therefore, the trial court erred in concluding that Nash's procedure has been recognized in court as reaching the requisite scientific stage of verifiable certainty.[16]

After the trial court denied Bravo's motion in limine, Nash testified that "to [hi]s knowledge[, the HGN test] is reliable in approximating [a person's BAC]." Nash, who had approximately 930 hours in traffic enforcement training, attended the Drug Recognition Expert ("DRE") program, and had performed the HGN test "a couple thousand times," explained that he received training regarding the correlation between the HGN and vertical nystagmus tests and a person's BAC.[17] According to Nash, the DRE issued a "matrix card" which contained various "reference material" regarding the procedure.[18] Nash also testified that the National Highway Traffic Safety Administration ("NHTSA") conducted studies in 1977, 1983, 1986, and 1987 regarding the accuracy rate for estimating a person's BAC based on HGN tests, and the 1987 study revealed that the

---

[14] (Emphasis supplied.) *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996).

[15] See, e.g., *Kirkland v. State*, 253 Ga. App. 414, 416 (559 SE2d 161) (2002) (trial court did not err in admitting the arresting officer's opinion testimony that six of six clues on defendant's HGN test indicated a BAC of 0.10 grams or greater).

[16] We reiterate that the *Harper* decision requires recognition of a procedure or technique "in a substantial number of courts" before a trial court "may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." *Harper*, 249 Ga. at 526 (1). See also *Grinstead v. State*, 269 Ga. App. 820, 822 (1) (605 SE2d 417) (2004) (reliance on one court opinion is an insufficient basis for taking judicial notice of a particular scientific procedure or technique): Here, it appears that the trial court relied solely on *Webb*, which, as we have already explained, does not recognize the technique at issue here as required by *Harper*.

[17] We note that at the motion for new trial hearing, Bravo offered the testimony of Anthony Palacios, a certified DRE instructor who taught Nash at the DRE program. According to Palacios, "DRE officers are trained that there is a relationship between someone's angle of onset [of nystagmus] and someone's BAC. But they're also specifically trained in – in at least three different areas in the student manual that I know of where officers are instructed that there is not – the formula is not accurate enough to specifically predict someone's BAC." Palacios further testified that Nash's estimate of Bravo's BAC runs contrary to the proscriptions set forth in the DRE manual. Pretermitting whether the trial court or this Court is authorized to consider the testimony of a witness at a motion for new trial hearing who casts doubt on the credibility of a trial witness, we do not rely on Palacios's testimony in reaching our decision because Nash's trial testimony failed to demonstrate that the technique of quantifying BAC based on an HGN test is scientifically reliable.

[18] The State tendered the DRE matrix card, but Bravo objected, and the trial court sustained the objection. The card does not appear in the record.

method was 96 percent accurate.[19] On cross-examination, however, Nash explained that the 1977 study evaluated the accuracy of using the HGN test and other field sobriety tests to determine whether a person's BAC was 0.10 grams or higher.

Pretermitting whether we can consider Nash's testimony given after the motion in limine was denied in deciding whether the trial court abused its discretion in so ruling, his testimony falls short of establishing that the method at issue has reached a scientific stage of verifiable certainty. None of the materials referred to by Nash was admitted into evidence. Further, it appears that the NHTSA studies that Nash referenced studied the reliability of using a HGN and other field sobriety tests to determine if a person was impaired by alcohol or that their BAC exceeded the legal limits; it is not clear that the studies found the method of estimating a precise BAC based on field studies to be reliable.[20] And Nash's testimony that "to his knowledge" the method was reliable in approximating BAC is simply insufficient. Thus, we conclude that the State failed to establish the scientific validity and reliability of the procedure at issue.[21] It follows that the trial court abused its discretion by admitting Nash's testimony regarding Bravo's specific BAC.[22]

2. The State argues that even if the trial court erred in admitting Nash's testimony regarding Bravo's BAC, the admission was harmless because there was overwhelming evidence of Bravo's guilt. We do not agree.

The proper test to determine whether nonconstitutional error is harmless is not whether there is sufficient other evidence to convict but "whether it is highly probable that the error did not contribute to the verdict."[23]

---

[19] None of the studies was admitted into evidence.

[20] Again, the State failed to submit these studies into evidence, which precludes our review thereof.

[21] See *Leftwich v. State*, 245 Ga. App. 695, 696 (538 SE2d 779) (2000) (affirming the trial court's exclusion of evidence of testing using a penile plethysmograph because the defendant failed to establish the reliability of the testing); *Izer v. State*, 236 Ga. App. 282, 283 (511 SE2d 625) (1999) (holding that trial court erred by admitting evidence of readings from a laser-based speed detection device because the State failed to establish the reliability and acceptance of the scientific principles involved), superseded by statute as stated in *Van Nort v. State*, 250 Ga. App. 7, 7-8 (1) (550 SE2d 111) (2001) (speed-detecting device admissible under OCGA § 40-14-17); *Gentry v. State*, 213 Ga. App. 24, 25 (2) (443 SE2d 667) (1994) (holding that the trial court erred in admitting evidence of a penile plethysmographic test performed on the defendant because other states have specifically rejected the technique and the State failed to establish the reliability thereof); *Hubbard v. State*, 207 Ga. App. 703, 704 (429 SE2d 123) (1993) (trial court erred in admitting evidence of the ontrack system for drug detection because the technique has not been widely recognized and the State failed to produce expert testimony that the procedure had been established with verifiable certainty).

[22] See *Grinstead*, 269 Ga. App. at 823 (1); *Hubbard*, 207 Ga. App. at 704.

[23] *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007).

Bravo was charged with DUI less safe, not DUI per se. Nevertheless, as this Court has previously concluded, evidence regarding his BAC is relevant to the DUI less safe charge.[24] The only evidence of Bravo's BAC was Nash's inadmissible opinion testimony that his BAC was 0.25, evidence that the prosecutor emphasized in his closing argument. In light of the remaining evidence of Nash's impairment, combined with the testimony of defense witnesses and the fact that the jury had difficulty reaching its verdict, we conclude that it is highly probable that the erroneous admission of the evidence contributed to the verdict.[25] Accordingly, the trial court's admission of Nash's testimony regarding Bravo's 0.25 BAC was not harmless.[26]

3. In light of our holding in Division 1, Bravo's second claim of error is moot and not likely to recur on retrial.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 28, 2010.

*John F. Nebl*, for appellant.
*Robert Stokely, Solicitor-General, Natalie Ashman, Assistant Solicitor-General*, for appellee.

---

[24] See *Webb*, 277 Ga. App. at 357 (1) (numerical evidence of the defendant's BAC was probative of determining whether he was under the influence of alcohol to the extent that he was less safe to drive); *Kirkland*, 253 Ga. App. at 416 (no error in admitting arresting officer's testimony that the results of the HGN test indicated a BAC of 0.10 grams or greater).

[25] Compare *Lindsey*, 282 Ga. at 450 (2); *Johnson v. State*, 233 Ga. App. 301, 304 (3) (c) (504 SE2d 8) (1998).

[26] See *McKinley v. State*, 303 Ga. App. 203, 207 (2) (692 SE2d 787) (2010).