### A99A2116. BOWEN v. THE STATE.
(531 SE2d 104)

SMITH, Judge.

We granted Christopher C. Bowen's appeal from the trial court's order revoking his probation after the court determined that he violated the terms and conditions of his probation. Bowen contends that the State failed to satisfy its evidentiary burden under OCGA § 42-8-34.1 (a). We agree and reverse.

Bowen entered a negotiated guilty plea to the offense of statutory rape on March 11, 1997.[1] Bowen received a probated sentence of 12 years subject to his compliance with certain terms and conditions including not "to use drugs in any illegal manner" and to submit to random drug testing. After Bowen tested positive for marijuana on April 7, 1999, the State submitted a petition to revoke Bowen's probation.

At the probation revocation hearing, the State contended that Bowen had violated a special condition of probation. See OCGA § 42-8-34.1 (c). The State's sole witness, Jill Hardegree, the probation officer assigned to supervise Bowen, testified that Bowen's urine was tested using a drug testing kit provided by the State. She testified that she generally performed about 25 such tests per month. According to Hardegree, when Bowen reported to the county probation office on April 7, 1999, he was asked to submit to a random drug screen administered by her surveillance officer.

Bowen objected to the admission of the test results on two separate grounds: that Hardegree had not been the person who performed the actual test and that the test at issue was "a novel scientific test" within the meaning of *Harper v. State,* 249 Ga. 519, 525-

---

[1] Bowen also entered a guilty plea to the offense of obscene/abusive language.

526 (1) (292 SE2d 389) (1982). Bowen argued that the test results should not be considered in evidence.

Satisfied with the State's proof of the chain of custody and as to Hardegree's personal knowledge that the urine specimen tested belonged to Bowen, the trial court focused on the latter issue.[2] Hardegree knew that this test, the "on track test stick," had been developed by Roche Diagnostic and used separate sticks for detecting marijuana, cocaine, and amphetamines. She testified that her knowledge of the process was based on the "test stick information that they send us in the box." Hardegree, who had never previously testified about the administration of this test, made no claim to having any knowledge about the scientific basis for the procedure. Hardegree conceded she had received no training on the characteristics, theory, or reliability of the test itself.

The trial court found that Bowen violated his probation based exclusively on Hardegree's testimony that Bowen tested positive for drugs on this urine test. The court revoked Bowen's probation "in accordance with OCGA §§ 42-8-38, 17-10-1 (a) (3) (A)," and ordered Bowen "to continue on supervised probation after posting a $2,000 bond and pending a discretionary appeal." The trial court deferred sentencing pending a decision by this court whether to hear the matter.

In his only enumerated error, Bowen contends the trial court erred by revoking his probation on the basis of a drug test that the State failed to prove was scientifically reliable. Bowen claims the trial court erred in giving any consideration to the test result. We agree.

After a procedure has been recognized in a substantial number of jurisdictions, a trial court may take notice, without receiving evidence, that the procedure has been established with verifiable certainty. *Harper*, supra at 525-526 (1). A trial court may also decide a procedure or technique has reached a "scientific stage of verifiable certainty," from evidence presented to it by the parties or an expert or based on exhibits, treatises, or the rationale of cases in other jurisdictions. Id. at 525.

As the State readily acknowledges, the analysis of Bowen's urine "was performed using the Abuscreen Ontrak test developed and marketed by Roche Diagnostic Systems, Inc." But in *Hubbard v. State*, 207 Ga. App. 703 (429 SE2d 123) (1993), this court reversed drug

---

[2] Hardegree testified that she was present when Bowen was given an empty cup, watched Bowen enter the rest room accompanied by the other officer, and observed the urine in the cup when they exited the rest room. She explained that policy required that a person of the same gender observe him urinate into the cup. Hardegree was shown the stick indicating the results.

convictions that were based on positive urine test results obtained on the "ontrack system." In reversing, we found that the trial court erred in admitting any testimony as to test results because

> the ontrack system has not been widely recognized and the trial court, in essence, took judicial notice that the ontrack test results were based on accepted scientific theory without receiving expert testimony that the procedure has been established with verifiable certainty. .

Id. at 704. We further noted, "[a] review of the decisions of this court, our Supreme Court and the courts of other states reveals no decision in which the 'ontrack system' has been discussed as a reliable method of drug detection." Id.

It was the State's burden to establish the reliability of this particular test by expert testimony or to offer authority subsequent to *Harper* to prove that this urine testing procedure had become scientifically established with verifiable certainty in Georgia or in other jurisdictions. Id. This the State failed to do. Compare *Hunt v. State*, 173 Ga. App. 638 (327 SE2d 500) (1985) (State offered expert testimony about two separate urine test results and about the validity of the testing instrument).

In a recent nonbinding decision, this court reiterated the point of law that under the holding of *Hubbard*, the ontrack system for drug detection is not admissible evidence unless accompanied by expert testimony as to the test's reliability. *Kendrick v. State*, 240 Ga. App. 530, 532 (2) (523 SE2d 414) (1999) (physical precedent only). Again, as in *Hubbard*, we find the drug test result lacked probative value since no expert testimony was offered by the State to prove the scientific reliability of the ontrack system as used for the purpose of drug detection. *Hubbard*, supra; see *Kendrick*, supra.

For purposes of revoking probation, the State has a lesser burden of proof and must show by only a preponderance of evidence that a defendant violated a special condition of probation issued under OCGA § 42-8-34.1. *Manville v. Hampton*, 266 Ga. 857, 858 (2) (471 SE2d 872) (1996); *State v. Jones*, 196 Ga. App. 896 (397 SE2d 209) (1990). But here, since the State failed to sustain its evidentiary burden, it was error to revoke Bowen's probation.

*Judgment reversed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 8, 2000.

*Jackie G. Patterson, Yasma Patterson*, for appellant.

*Peter J. Skandalakis*, District Attorney, *Julianne W. Holliday*, Assistant District Attorney, for appellee.