### A01A0103. CHEATWOOD v. THE STATE.
(548 SE2d 384)

BARNES, Judge.

Don Robin Cheatwood appeals his probation revocation, arguing that the trial court erred in admitting into evidence the results of Roche Diagnostic Corporation's "OnTrack TesTstik" drug test as proof he violated the terms of his probation. Cheatwood also argues that the State presented insufficient evidence that the test was administered in a manner that ensured a reliable result. We conclude that the trial court did not err in finding that the State presented sufficient expert testimony to establish that the techniques and procedures of the OnTrack TesTstik "have reached a scientific stage of . . . verifiable certainty," and that the test was administered in a manner that ensured a reliable result.

Cheatwood pled guilty on February 2, 1998, to selling methamphetamine in violation of the Georgia Controlled Substances Act. The trial court sentenced him to serve ten years on probation, and two of the conditions of his probation were that he would not violate any

---

laws and would produce on demand a urine sample to be tested for controlled substances.

On January 20, 2000, Cheatwood reported to the probation office and discovered that all the probationers were being screened for drugs. He produced a urine sample in the presence of his probation officer. He then placed his sample cup, labeled with his name, on a table and gave his name and Social Security number to a second officer who recorded the information in a log sheet. A third officer used three separate OnTrack TesTstik devices on Cheatwood's urine and testified that one test was negative for cocaine metabolites, one was negative for methamphetamine, and one was positive for marijuana. The testing officer then relayed the results to the second officer who marked the log accordingly to show that Cheatwood's urine tested positive for marijuana.

After talking with his probation officer regarding the test results, Cheatwood signed a form denying he had used marijuana and requesting a confirmation test. He also initialed a section of the form confirming that the specimen to be tested further was his urine.

Stuart Bogema, who has a B.S. in chemistry and biology and a Ph.D. in pathology and toxicology, testified for the State regarding the OnTrack TesTstik. Dr. Bogema is certified with the American Board of Forensic Toxicology and the American Board of Clinical Chemistry and Toxicological Chemistry, and the trial court recognized him as an expert in the field of toxicology and drug identification without objection. He explained that "forensic toxicology" is the science of analyzing body tissues and fluids for drugs and poisons, the results of which are used in forensic proceedings. He has tested devices used to determine the presence of drugs in body fluids for seventeen years and has performed approximately half a dozen studies of different on-site testing devices over the last three years. He specifically evaluated the OnTrack TesTstik, along with other tests, as a consultant to the U. S. Postal Service.

Dr. Bogema explained the technology behind the test, which is "based on a principle called immunoassay, which uses what are called antibodies." Antibodies are proteins produced by the human body, and certain antibodies bind to certain drugs. The antibodies are embedded into a membrane encased in a long plastic container that is dipped into a urine specimen for a few seconds and then pulled out. The urine migrates through the test strip to the membrane containing the antibody, where the chemical reaction or immunoassay takes place. A control line indicates when the specimen testing is completed, and the presence or absence of a blue line on the device indicates whether the urine sample contained the specific drug for which it was being tested.

The Postal Service study involved several hundred specimens

tested for cocaine, marijuana, and methamphetamine. The OnTrack TesTstik was 100 percent accurate, Dr. Bogema testified, and was as good or better than nine additional immunoassay tests included in the study. In his opinion, based on his tests and findings, the OnTrack TesTstik was 100 percent reliable for testing marijuana or cocaine.

Following the parties' presentation of evidence and argument, the trial court ruled:

> After hearing the testimony of Dr. Bogema, the expert who was tendered as an expert and his qualifications were not objected to, I find that the techniques and procedures that he testified to have reached a scientific stage of . . . verifiable certainty, and, therefore, they're admissible in evidence in a probation revocation such as we have before us here.

The trial court further noted that all three probation officers involved specifically remembered testing Cheatwood on January 20, 2000. Therefore, it concluded that the State carried its burden of showing by a preponderance of the evidence that Cheatwood violated the conditions of his probation as alleged and revoked 120 days.

1. Cheatwood argues that the trial court erred in admitting the test results into evidence, because the State failed to produce an expert witness who had tested Cheatwood's urine and failed to produce the actual test stick or pictures of the test stick. He further argues that Dr. Bogema's opinion as to the OnTrack TesTstik's reliability was based on insufficient testing.

The test in Georgia for "determining whether a given scientific principle or technique is a phenomenon that may be verified with such certainty that it is competent evidence in a court of law" was first set out in *Harper v. State*, 249 Ga. 519, 524 (1) (292 SE2d 389) (1982). Unlike other states that base admissibility on whether the technique has gained general acceptance in the applicable scientific community, in Georgia

> it is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure "rests upon the laws of nature." The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions.

(Footnote omitted.) Id. at 525.

Our appellate courts have subsequently applied the "scientific stage of verifiable certainty" test to a number of procedures. In some instances, the appellate court addressed the procedure's validity only as to the case on appeal. See, e.g., *Caldwell v. State*, 260 Ga. 278, 285 (1) (b) (393 SE2d 436) (1990) (testimony by ten expert witnesses demonstrated that DNA identification techniques were based on sound scientific theory); *Izer v. State*, 236 Ga. App. 282, 283 (511 SE2d 625) (1999) (absence of expert testimony regarding laser speed detection's verifiable certainty required reversal).

However, "once a procedure has been utilized for a significant period of time, and expert testimony has been received thereon in case after case, the trial court does not have to keep reinventing the wheel; a once novel technology can and does become commonplace." *Hawkins v. State*, 223 Ga. App. 34, 36 (1) (476 SE2d 803) (1996). Thus, in *Hawkins* we held that a trial court may admit evidence of the horizontal gaze nystagmus test in a DUI trial without first requiring expert testimony as a foundation for its admission. Id. at 38. Similarly, the Supreme Court of Georgia held that

> trial courts may take judicial notice that the Intoximeter 3000 machine test results are based on accepted scientific theory or "rest upon the laws of nature"; and, when the statutory requirements for admissibility are met, the results may be admitted into evidence without expert testimony regarding the scientific theory behind the operation of the test.

*Lattarulo v. State*, 261 Ga. 124, 127 (3) (401 SE2d 516) (1991).

We have addressed the scientific validity of the OnTrack TesTstik in three previous opinions. In two cases, *Hubbard v. State*, 207 Ga. App. 703 (429 SE2d 123) (1993), and *Bowen v. State*, 242 Ga. App. 631 (531 SE2d 104) (2000), the State presented no expert testimony to establish the test's reliability or verifiable certainty. Because testimony regarding the test's administration was insufficient to sustain the State's burden of proof, we reversed both probation revocations. In *Kendrick v. State*, 240 Ga. App. 530, 532 (2) (523 SE2d 414) (1999) (physical precedent only), we reiterated that "the ontrack system for drug detection is not (yet) sufficiently recognized as reliable and so is not admissible evidence without expert testimony supporting its verifiable certainty," although we affirmed the revocation on other grounds.

In this case, the State submitted expert testimony establishing the verifiable certainty of the test used. Thus, the trial court did not err in admitting the drug test results into evidence.

2. Cheatwood asserts the trial court erred in admitting the test

results because the State presented "insufficient evidence that the actual test administered to appellant was done in a manner which ensured a reliable result." He argues that, because the test sticks were not individually marked with the probationers' names, they could have gotten mixed up. Finally, he contends that, without the actual test stick or a photograph of it, the only record of a positive finding consists of a plus symbol in the log sheet.

These arguments go to the weight of the evidence presented, not to its admissibility. Cheatwood handed his sample to the testing officer, who placed each urine sample on a paper towel. The probation officer testified that he was careful to keep the test sticks on the paper towel containing the labeled urine cup. Cheatwood was never out of sight of the urine sample, sitting three to five feet from the table during the testing process. All three probation officers specifically remembered Cheatwood and his positive test result. "This court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court." (Citations and punctuation omitted.) *Cordle v. State*, 173 Ga. App. 369, 370 (326 SE2d 557) (1985). We find no such abuse here and no error by the trial court.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 14, 2001.

*Daniel B. Simon III*, for appellant.

*James R. Osborne, District Attorney, F. Andrew Lane, Jr., Assistant District Attorney*, for appellee.