A07A0212. MANN v. THE STATE.
(645 SE2d 573)

SMITH, Presiding Judge.

We granted Sean Mann's application for discretionary appeal of the trial court's order revoking the remaining 14 years of his probation. Mann contends that the trial court erred by admitting the results of a Roche "OnTrack TesTstik" without a showing that the test had reached a scientific state of verifiable certainty, which would allow admission of the test's results in the absence of expert testimony. For the reasons set forth below, we agree, vacate the trial court's order revoking the balance of Mann's probation, and remand this case with direction.

A court may revoke probation based upon alleged violations of probation conditions if "evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1 (b). And this Court will not interfere with a revocation absent manifest abuse of discretion on the part of the trial court. *Cheatwood v. State*, 248 Ga. App. 617, 621 (2) (548 SE2d 384) (2001). Accordingly, "[i]f admissible evidence is presented in support of the allegations regarding revocation of probation, this court will affirm." (Citations omitted.) *Young v. State*, 265 Ga. App. 425, 426 (594 SE2d 667) (2004).

Viewed in this light, the record shows that, on July 7, 1997, Mann was sentenced to twenty years of probation for aggravated assault and five years probation for possession of a firearm by a convicted felon, to be served concurrently. The trial court imposed general conditions of probation and special conditions requiring Mann to pay restitution to the victims and to serve 120-180 days in a detention center.

On June 7, 2006, the State petitioned the superior court to revoke Mann's probation because he possessed cocaine based on a positive urine test (Count 1), violated a curfew (Count 2), moved and failed to report his new address (Count 3), and failed to pay his court-ordered

fines and victim restitution (Count 4). Mann admitted Count 4 and denied the remaining allegations against him. The State subsequently abandoned Count 2.

Evidence presented during the hearing on the petition showed that Mann was involved in a fight and taken to a hospital where he received stitches on his head. A probation officer went to the hospital and tested Mann's urine for the presence of drugs using a Roche OnTrack TesTstik. The test results were positive for cocaine.

Mann told the probation officer that hospital personnel gave him two medications in the emergency room: Scelaxin and Diclofenac. The probation officer testified that he understood that Scelaxin was a muscle relaxer and that he was not familiar with Diclofenac. The probation officer admitted that he did not determine from hospital personnel whether any additional medications might have been given to Mann for pain. The probation officer admitted that he did not know whether Mann might have been given a medication that would affect his drug test results.

The probation officer testified that he was trained on how to administer the test by Roche Diagnostics, that he was certified to use it, that he had used it approximately 300-400 times, that he had previously been allowed to testify about the results of this test in Georgia Superior Courts, that based on his training, the drugs identified by Mann would not have caused a false positive test result, that based on his training, he did not know of anyone who prescribed cocaine for pain, and that he had not been told that a pain medication like Lidocaine could cause a positive test result. The probation officer acknowledged that he was not a chemist, that he did not know how the test worked, that Mann "more than likely" had been given a medication for pain, and that he did not know if the medication could have affected the test results.

Mann objected to the admission of the OnTrack TesTstik results in the absence of expert testimony laying the foundation for the accuracy of the test. The trial court took the issue under advisement to study the law, and ruled two days later that it would

> admit the results of the test. I think that the test has achieved a certain level of acceptance in the state of Georgia. In this court, or at least in courts in this circuit[ ], we have, in the past, had representatives that were expert more than just administrators of the test, but other representatives. It has been accepted in this state and in this circuit, the results of the OnTrack method for cocaine. I don't find that there was any other substance that could give you a cross positive or false positive for the condition that was testified about. You did not testify. But was testified about, the injury to your

head. If you had been given a general pain killer, it would have been probably a morphine base or some other narcotic, not cocaine. So, I don't find that to be likely in this case. So I find that you violated your probation as alleged in all four counts.

1. In his sole enumeration of error, Mann asserts that the trial court erred by admitting the test results because the test has not yet reached "a scientific state of verifiable certainty." In *Harper v. State*, 249 Ga. 519, 525-526 (1) (292 SE2d 389) (1982), the Georgia Supreme Court held that it is proper for the trial court to decide whether a scientific procedure or technique has reached a scientific state of verifiable certainty such that it may be admitted into evidence without taking specific evidence regarding the reliability of the procedure.[1]

> The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. The significant point is that the trial court makes this determination based on the evidence available to him rather than by simply calculating the consensus in the scientific community. Once a procedure has been recognized in a *substantial number of courts*, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature.

(Citations omitted; emphasis supplied.) Id.

In *Grinstead v. State*, 269 Ga. App. 820 (605 SE2d 417) (2004), this court held that "[o]ne case is not enough" under this standard. Id. at 822 (1). Here, the trial judge appears to have relied upon only one reported Georgia decision to support his decision. See *Cheatwood*, supra, 248 Ga. App. at 620 (1) (admitting OnTrack TesTstik results when expert testimony about the reliability of the test was presented). Our research has revealed no other Georgia case finding that the OnTrack TesTstik is reliable based upon expert testimony.

There are, however, several reported Georgia decisions finding that the test has not yet reached a scientific state of verifiable

---

[1] OCGA § 24-9-67.1, which governs expert witness testimony in civil cases, does not apply to probation revocation hearings. *Carlson v. State*, 280 Ga. App. 595, 596-598 (1) (634 SE2d 410) (2006). See also OCGA § 24-9-67.

certainty that would justify its admission in the absence of expert testimony. *Grinstead,* supra; *Bowen v. State,* 242 Ga. App. 631, 633 (531 SE2d 104) (2000); *Kendrick v. State,* 240 Ga. App. 530, 532 (2) (523 SE2d 414) (1999) (physical precedent only); *Hubbard v. State,* 207 Ga. App. 703, 704 (429 SE2d 123) (1993). As a result, a substantial number of courts do not appear to have concluded that the test has been established with verifiable certainty.

Our analysis does not end here, however, because the trial court also relied upon expert testimony taken in other cases at the trial court level to support its conclusion that expert testimony was not needed in the case before it. While taking judicial notice of testimony in other cases before the same court might provide a basis for a trial court to conclude that a scientific test has reached a scientific state of verifiable certainty,[2] the trial court must follow the procedural requirements announced by our Supreme Court in *Graves v. State,* 269 Ga. 772, 775 (4) (504 SE2d 679) (1998), overruled on other grounds, *Jones v. State,* 272 Ga. 900 (537 SE2d 80) (2000).

Specifically, "if a trial court intends to take judicial notice of any fact, it must first announce its intention to do so on the record, and afford the parties an opportunity to be heard regarding whether judicial notice should be taken." *Graves,* supra, 269 Ga. at 775 (4) (a). The Supreme Court's rationale for requiring such a rule follows:

> Unless an accused is informed at the trial of the facts of which the court is taking judicial notice, not only does he not know upon what evidence he is being convicted, but, in addition, he is deprived of any opportunity to challenge the deductions drawn from such notice or to dispute the notoriety or truth of the facts allegedly relied upon. Moreover, there is no way by which an appellate court may review the facts and law of a case and intelligently decide whether the findings of the lower court are supported by evidence where that evidence is unknown.

(Citation and footnote omitted.) Id. In this case, the trial court did not follow this procedure, resulting in the exact scenario the Supreme Court sought to avoid in *Graves,* supra. As a result, we cannot find that judicial notice of testimony in other cases supports the trial court's ruling in this case.

Because the State failed to establish the reliability of the On-Track TesTstik with expert testimony and there was no admissible

---

[2] See generally *Petkas v. Grizzard,* 252 Ga. 104, 108 (312 SE2d 107) (1984) (trial court may take judicial notice of records in the same court).

evidence that a "substantial number of courts" have recognized the reliability of the test, the trial court erred by admitting the test results and insufficient evidence supports the trial court's finding that Mann violated his probation by possessing cocaine. *Harper,* supra, 249 Ga. at 526. See also *Grinstead,* supra.

2. Having found that insufficient evidence supports one of the grounds used to revoke Mann's probation, we must now determine whether the trial court's order revoking the balance of Mann's probation may still stand. Mann asserts that his probation may not be revoked based upon the remaining two counts because they were technical violations justifying a maximum revocation of two years. See OCGA § 42-8-34.1 (c).

We disagree. The trial court was authorized to revoke the balance of Mann's probation based upon his admitted violation of the special condition of restitution imposed in his initial sentence. See OCGA § 42-8-34.1 (e) (court may revoke balance of sentence for violation of special condition of probation); *Walker v. Brown,* 281 Ga. 468 (639 SE2d 470) (2007) (holding 2001 amendments to OCGA § 42-8-34.1 apply retroactively); *Hill v. State,* 270 Ga. App. 114, 118, n. 20 (605 SE2d 831) (2004) (payment of restitution is special condition of probation under similar sentencing form); *Cannon v. State,* 260 Ga. App. 15, 17 (579 SE2d 60) (2003) (by admitting violation, defendant waived any challenge to sufficiency of evidence with regard to violation of restitution condition of probation).

While the trial court was authorized to revoke the balance of Mann's probation based on his failure to comply with a special condition of restitution, it appears from our review of the record that this particular violation may not have played a role in the trial court's decision to revoke. Since the revocation of probation is a matter within the discretion of the trial court, we vacate the trial court's order and remand this case to the trial court to decide whether to exercise its discretion to revoke the balance of Mann's probation based upon his failure to comply with the special condition of restitution standing alone, or to impose a lesser penalty instead. Cf. *Grinstead,* supra, 269 Ga. App. at 824 (2).

*Judgment vacated and case remanded with direction. Barnes, C. J., and Miller, J., concur.*

DECIDED APRIL 12, 2007.

*Thomas H. Hyman,* for appellant.

_Timothy G. Vaughn, District Attorney, Russell P. Spivey, Assistant District Attorney_, for appellee.