**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

November 16, 2012

# In the Court of Appeals of Georgia

A12A0920. WHITE v. THE STATE.

PHIPPS, Presiding Judge.

James David White was serving the probated portion of his sentence entered upon drug and firearm convictions when the trial court revoked his probation after concluding that he had committed new drug possession crimes. This court granted White's application for discretionary review. Because White has shown that the state failed to prove that he was in possession of the contraband, and the evidence was therefore insufficient to justify the probation revocation, we reverse.

The burden is on the state to prove a violation of probation terms by a preponderance of the evidence.[1] This court will not interfere with a revocation absent manifest abuse of discretion on the part of the trial court.[2]

At the probation revocation hearing, the state called only one witness, a law enforcement officer who had been working as a narcotics investigator. He testified that he had received information from several confidential informants that an individual named Todd Anderson was selling drugs out of his lawnmower repair shop; the investigator had also heard, from sources not made clear by the record, that White was frequently at the shop; the investigator was not told, however, that White was a part of any drug operation.[3] The investigator ran a criminal records check on

---

[1] See OCGA § 42-8-34.1 (b) ("A court may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged."); *Bowen v. State*, 242 Ga. App. 631, 633 (531 SE2d 104) (2000) (state has burden to show by preponderance of evidence that a defendant violated a condition of probation).

[2] *Cheatwood v. State*, 248 Ga. App. 617, 621 (2) (548 SE2d 384) (2001).

[3] The state does not dispute that the statements of the informants, introduced through the officer's testimony, were not competent evidence for purposes of probation revocation. See *Brown v. State*, 294 Ga. App. 1, 4 (2) (668 SE2d 490) (2008); *Smith v. State*, 283 Ga. App. 317, 318 (641 SE2d 296) (2007) ("Hearsay evidence has no probative value and is inadmissible in a probation revocation proceeding. Thus, such evidence is incapable of supporting a trial court's findings,

Anderson and White and learned that both men were on probation and had waived their Fourth Amendment rights as a condition of probation.

At about 11:00 a. m. on August 19, 2011, the investigator, along with at least two other law enforcement officers, arrived at the lawnmower repair shop to conduct a search. The doors to the shop's three bays were already open. There were three men at the shop; each man either emerged from the shop when the police arrived or was already standing just outside the shop.

As the officers arrived, White was turning his pickup truck into the driveway, and Anderson was in the passenger seat. The investigator approached Anderson at the truck and informed him of the purpose of the police presence. According to the investigator, Anderson said that he and White were partners in the shop; the investigator testified that White may not have heard Anderson make that statement, however. The investigator testified that no one indicated that White worked at the shop. And in any event, the investigator admitted that he did not clarify White's role at the shop.

The investigator and the other officers searched the premises, which included a residence where Anderson and his girlfriend lived. Inside the shop were tools,

whether or not objection was lodged.") (citation and punctuation omitted).

3

equipment, parts, and other indicia of an operating lawnmower repair business. A search inside the shop yielded: (a) an oxycodone pill, found inside a closed, small metal box on top of a refrigerator; (b) a clear smoking device that contained methamphetamine residue, found on top of an approximately waist-high shelf near a business desk; (c) approximately 14 grams of methamphetamine, a set of digital scales, marijuana, and empty plastic bags, all found inside a pouch that had been hidden though a crack in the ceiling; and (d) less than an ounce of marijuana, found in a closed, small leather bag lying on top of welding equipment.

Anderson's girlfriend was inside the residence. A search of a bedroom yielded methamphetamine, marijuana, and a smoking device. White, Anderson, Anderson's girlfriend, and the three men were arrested.

The sole defense witness at the hearing was Anderson, who waived his Fifth Amendment privilege against self-incrimination. Anderson denied making the statement to the investigator that White was his business partner. He testified that White was a friend who worked occasional jobs with him, and at times, afforded him the use of his truck. For example, the two had once worked together on a car's motor at the residence of the car's owner, and White had driven them there. Also, when Anderson was approached by the investigator at White's pickup truck on the morning

4

in question, the two were returning from a scrap yard. Anderson's own truck was not capable of pulling a loaded trailer, and further, Anderson had no driver's license. Anderson usually paid White for using his truck. Thus, it was not uncommon for White to come to the shop, and there was evidence that White sometimes stored beverages in the shop's refrigerator.

Regarding the contraband found inside the shop, Anderson admitted that he had placed the smoking device on the shelf before White arrived to pick him up that morning.[4] When White arrived, he did not enter the shop; instead, he hooked a trailer onto his truck, and he and Anderson went to a scrap yard. Anderson admitted also that he had obtained drugs from a dealer and had hidden the bag of contraband in the ceiling.[5] But, he maintained, White knew nothing about the drugs, explaining, "I wouldn't be able to call [White] and get a ride nowhere, to the scrap yard or anything 'cause [White] wouldn't have come around me had he know[n] I was fooling with drugs."

---

[4] Anderson denied that he had left it in plain view, recalling that he had tucked it inside a coiled hose.

[5] Anderson denied having prior knowledge about the contraband stashed in the leather bag found on the welding equipment.

Anderson identified the three men who had been at the shop that morning. One was an employee of the shop; another lived in a camper on the premises; and the third was there to replace some roofing materials. It had been one of those three men, Anderson recalled, who directed the police to the contraband hidden in the ceiling. Anderson also testified that the entirety of the premises searched were leased solely to his girlfriend by an unrelated third party.

At the end of the probation revocation hearing, the trial judge said to White, "[Y]ou and Mr. Anderson traveled around together . . . . You get the stuff, you take it back and forth, you get your metal, you do your thing, you're out together, and the Court finds that you possessed methamphetamine, oxycodone, and marijuana." Without additional specific written findings, the trial court revoked seven years of White's probation for committing new drug offenses of possessing the oxycodone, methamphetamine, and marijuana discovered inside the shop.

Challenging the revocation, White argues that the evidence was insufficient to establish that he was in possession of the drugs. The state counters that the evidence was sufficient as it showed that White was Anderson's "business partner" and additionally placed White upon the premises of the business where the drugs were located.

6

"Where, as here, there is no evidence that the defendant was in actual possession of contraband, the State must present evidence showing the defendant's constructive possession."[6] "Possession [of drugs] may be constructive, but spatial proximity alone is insufficient to prove constructive possession of [the drugs]."[7] Thus, "a probationer's mere presence in the area where drugs are found will not justify a revocation based on possession of drugs, even under the more relaxed preponderance of the evidence standard";[8] instead, the state must show some connection between the probationer and the drugs other than spatial proximity.[9] Furthermore, "when the State's constructive possession case is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be

---

[6] *Scott v. State*, 305 Ga. App. 596, 598 (699 SE2d 894) (2010) (citation and footnote omitted).

[7] *Brown*, supra at 5 (2) (punctuation and footnote omitted); see *Scott*, supra ("to prove constructive possession, the State was required to show some connection between [the probationer] and the drugs other than spatial proximity") (punctuation and citation omitted).

[8] *Scott*, supra at 599 (citation and footnote omitted).

[9] Id. at 598.

consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[10]

In the instant case, the circumstantial evidence was insufficient to show White's constructive possession of the contraband found. White neither owned nor leased any portion of the property. There was no evidence that he lived on or controlled any of the premises. The state adduced no evidence that any controlled substance was found in White's truck, that any controlled substance was found on his person, or that he was under the influence of any such drug.[11] The state pointed to Anderson's statement to the investigator that White was his partner in the shop,[12] but the investigator admittedly did not clarify White's role in connection therewith. And

---

[10] *Gray v. State*, 313 Ga. App. 470, 471 (1) (722 SE2d 98) (2011) (citation and punctuation omitted).

[11] See *Scott*, supra (construction possession requires showing that defendant knowingly had both the power and intention at a given time to exercise control over the drugs; power may be inferred from access to the drugs, and intent may be derived from a showing of a defendant's attempt to flee or elude police, defendant's inconsistent explanations for his behavior, presence of significant amounts of contraband and drug paraphernalia in plain view, defendant's possession of large amount of cash or drug-related paraphernalia, evidence that defendant was under the influence of drugs, or drug residue found on defendant).

[12] See generally *Gordon v. State*, 273 Ga. 373, 376 (2) (b) (541 SE2d 376) (2001).

while the evidence showed that it was not uncommon for White to go inside the shop, there was no evidence as to *when*, prior to the discovery of the drugs, White had been inside the shop. The investigator testified that he never saw White go inside the shop. Moreover, at the time in question, three men were already at the opened shop, and one of those men was a shop employee.[13] Given the foregoing circumstances,[14] the evidence fell short of proving, even under the more relaxed preponderance of the evidence standard, that White was in constructive possession of the drugs found inside the shop.[15] Therefore, the trial court abused its discretion in revoking White's

---

[13] See *Gray*, supra at 471-472 (1) (reiterating that the rule – evidence merely showing that contraband was found in a location occupied by the defendant is not sufficient to support a conviction, especially where other persons had equal access to the contraband and therefore an equal opportunity to commit the offense – applies also in probation revocation proceedings).

[14] See *Scott*, supra at 598-599 (noting requisite proof when state's case for revoking probation is based upon circumstantial evidence of drug possession).

[15] See *Gray*, supra (finding circumstantial evidence was insufficient to prove probationer's constructive possession of marijuana that was found inside a closet of a residential trailer, where the probationer was sitting "at the open front door of [the] trailer," the probationer had loaned his video game console to occupants of the trailer, and other individuals had access to the trailer, including a man who recently had sold drugs to a confidential informant); *Scott*, supra; *Brown*, supra at 5-6 (2) (reversing probation revocation where "[t]he only evidence putting [the probationer] near the cocaine was that [probationer] was sitting in front of the house where the cocaine was found"); *Anderson v. State*, 212 Ga. App. 329 (442 SE2d 268) (1994) (determining that evidence that the probationer was at his mother's residence, along with three

9

probation.[16] The cases relied upon by the state are inapposite and do not provide for an affirmance of the probation revocation in this case.[17]

*Judgment reversed. Ellington, C. J., concurs. Dillard, J., concurs in judgment only.*

---

other individuals, when the police found cocaine inside his mother's bedroom was insufficient to establish under the preponderance standard that the probationer was in possession of cocaine with intent to distribute); see also *Boatner v. State*, 312 Ga. App. 147, 148 (1) (717 SE2d 727) (2011) (reversing probation revocation for possession of rifle found leaning against the outside railing of porch on probationer's trailer, where probationer testified that the rifle was not his, probation officer acknowledged that rifle could have belonged to a neighbor, no ammunition was found inside probationer's residence or on his property, and a bullet found inside a truck parked near probationer's trailer did not match the rifle).

[16] See *Smith*, supra at 319 (where evidence was non-probative hearsay and otherwise insufficient, trial court abused its discretion in revoking probation).

[17] See *Mullens v. State*, 289 Ga. App. 872, 873-874 (1) (658 SE2d 421) (2008) (trial court did not abuse its discretion in revoking probation where probation term stated "[y]ou shall have no contact . . with any child" and evidence showed (i) probationer approached a minor girl and offered her candy, and (ii) probationer admitted having had incidental contact with minors); *Smith*, supra; *Cheatwood*, supra at 617-618, 621 (2) (where probation terms included that probationer would not violate any laws and would produce on demand a urine sample to be tested for controlled substances, trial court did not abuse its discretion in revoking probation based upon admissible evidence that probationer's urine had tested positive for marijuana).