**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 29, 2024**

# In the Court of Appeals of Georgia

A23A1395. MURPHY v. THE STATE.

HODGES, Judge.

Ollie Antonio Murphy appeals from a trial court order revoking 24 years of his probation. Murphy argues, among other things, that the trial court erred in finding that he violated certain conditions of his probation. For the reasons set forth below, we affirm the trial court's finding that Murphy committed new offenses in Douglas County, but vacate the trial court's order because it indicates that Murphy also committed other probation violations for which the State did not provide evidence at the revocation hearing. We therefore remand this case with direction that the trial court consider in its discretion what penalty to impose based strictly on Murphy's commission of the Douglas County offenses.

Under OCGA § 42-8-34.1 (b), a trial court may revoke a probated sentence if the evidence produced at the revocation hearing establishes the alleged probation violation by a preponderance of the evidence. It is well-settled that this standard is a far less stringent standard than that required to sustain a criminal conviction. See *Gaddis v. State*, 310 Ga. App. 189 (1) (712 SE2d 599) (2011). "Proof by a 'preponderance of the evidence' means proof by 'evidence upon the issues involved in which, while not enough to wholly free the mind from any reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than the other.'" (Citation omitted.) *Hunt v. State*, 327 Ga. App. 692, 693 (1) (761 SE2d 99) (2014). "The trial court sits as the trier of fact in revocation proceedings[,]" and "[t]his Court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court." (Citations and punctuation omitted.) *Grimes v. State*, 364 Ga. App. 518, 519 (875 SE2d 500) (2022).

With these principles in mind, we turn to the facts of this case. The record shows that in September 2018, Murphy entered a negotiated guilty plea to three counts of aggravated assault and was sentenced to 30 years with the first two years to

be served in confinement and the remainder to be served on probation. Murphy's sentence included a number of probation conditions.

On January 18, 2022, the State filed a petition to revoke Murphy's probation, alleging that he violated the following conditions of his probation:

General Condition No.1: Do not violate the criminal laws of any governmental unit. Whereas, on or about 03/04/2021, the defendant committed the offenses of Aggravated Assault (F) and Terroristic Threats (F) in Douglas County, GA. Whereas, on or about 01/10/2022, the defendant committed the offenses of Possession of a Schedule I Controlled Substance (F), Purchase/Possession/Manufacture/Distribution or Sale of Marijuana (F), Driving without a Valid License (M) and Wilful Obstruction of Law Enforcement Officers (M) in Cobb County, GA.

Other Condition: Pay court ordered monies as directed. Whereas, the def currently owes $190.00 in court charges and $928.00 in fee arrears and last made a payment on 03/11/2020.

The trial court conducted a hearing on the probation revocation in February 2023. Melissa Gonzalez,[1] Murphy's ex-girlfriend, testified at the hearing that on

---

[1] Murphy's appellate brief refers to Melissa "Gonzales," but the victim spelled her name during the probation revocation hearing "Gonzalez," so that is the spelling we have used in this opinion.

March 4, 2021, Murphy arrived at her home in Douglas County, upset that she blocked him on her phone, and choked her. According to Gonzalez, Murphy's "two hands were on [her] neck" and he pushed her against a large plant and the wall. She feared for her life and managed to run outside and call Murphy's mother. When she re-entered her house, Murphy choked her again. This time, Murphy put his two hands on her neck, pushed her against the wall, and she could "feel [her] feet lifting a little bit" off the floor. Murphy told Gonzalez he was going to kill her. She believed she was in eminent danger and needed to escape and call the police. The police were called, and pictures officers took of Gonzalez were introduced as exhibits.

The officer who responded to Gonzalez's call testified that Gonzalez told her Murphy "grabbed her by her throat with both hands and lifted her off the floor against the wall and yelled at her and told her . . . bitch, I'll kill you." Gonzalez also indicated that she couldn't breathe during the choking. The officer witnessed abrasions on Gonzalez's neck, "as well as bruising on her neck that was parallel . . . as if there [were] fingers on somebody's neck." The officer also testified that a neighbor witnessed Murphy's truck in the driveway, heard arguing, and saw Murphy's truck later drive down the road.

Following the hearing, the trial court entered an order revoking the balance of Murphy's probation. The order lists all of the terms and conditions of probation that the court found had been violated, detailing the same list included on the petition to revoke Murphy's probation, which noted not only the commission of the March 4, 2021 offenses in Douglas County, but also the commission of two new drug offenses, driving without a valid license, and wilful obstruction of law enforcement officers on January 10, 2022 in Cobb County, as well as his failure to pay court charges and fee arrears.

Murphy filed an application for discretionary review, arguing, among other things, that the trial court erred by finding that he committed the Cobb County crimes and failed to pay court-ordered fines because the State did not introduce evidence supporting those conclusions. We granted Murphy's application, see *Murphy v. State*, Case No. A23D0261 (granted March 29, 2023), and this appeal followed.

1. Murphy asserts that the trial court erred by finding he committed aggravated assault against Gonzalez in violation of his probation conditions.[2] This argument lacks merit.

"In terms of the sufficiency of the evidence, this Court will affirm the judgment of revocation if the record includes some competent evidence to show that the defendant violated the terms of his probation in the specific manner charged, notice of which must be provided in writing before the probation revocation hearing." *Caldwell v. State*, 327 Ga. App. 471, 472 (758 SE2d 325) (2014). In this case, the revocation petition alleged that Murphy committed aggravated assault on March 4, 2021 in Douglas County; it did not allege a particular way in which the aggravated assault was committed. Accordingly, to support a revocation of probation based on the commission of aggravated assault and the facts presented during the hearing, the State was required to show by a preponderance of the evidence that Murphy assaulted the victim "[w]ith any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation[.]" OCGA § 16-5-21 (a)

---

[2] Murphy does not challenge the trial court's ruling that he committed the offense of terroristic threats on March 4, 2021 in violation of his probation conditions, so we need not address the sufficiency of the evidence supporting that ruling.

6

(3). The use of a person's hands to assault another person satisfies the statutory requirement of the use of "any object, device, or instrument." See *Ferguson v. State*, 322 Ga. App. 565, 566-567 (1) (745 SE2d 784) (2013). And "strangulation" is defined under OCGA § 16-5-19 (11) as "impeding the normal breathing or circulation of blood of another person by applying pressure to the throat or neck of such person or by obstructing the nose and mouth of such person."

Murphy argues that the evidence presented at the revocation hearing did not establish that he "impeded [Gonzalez's] normal breathing or circulation of blood" as required by statute. First of all, the State did not have to show that Murphy impeded Gonzalez's normal breathing or circulation of blood, only that Murphy's offensive use of his hands around her neck was "likely to" result in strangulation. See OCGA § 16-5-21 (a) (3); see also *Maxwell v. State*, 348 Ga. App. 870, 875 (2) (825 SE2d 420) (2019) (finding that the indictment alleged assault with an object likely to result in strangulation, so the State was only required to show that the defendant used his hands in a manner likely to result in strangulation). Moreover, we conclude that the preponderance of the evidence was sufficient to support a conclusion that Murphy's offensive use of his hands actually resulted in impeding Gonzalez's normal breathing.

Gonzalez testified that Murphy choked her twice, with both hands, while pushing her against a large plant and wall. The second time, she could feel her feet lift off of the floor, and Murphy told her he was going to kill her. In addition, the officer who responded to the scene testified about the scratches, bruises, and press marks on Gonzalez's neck, and photographs were introduced showing these marks. This evidence was sufficient to support the trial court's finding that Murphy violated his probation by committing the new crime of aggravated assault.[3] See *Moore v. State*, 356 Ga. App. 752, 754 (1) (a) (848 SE2d 910) (2020) (concluding that evidence was sufficient to support aggravated assault based on strangulation where the victim testified the defendant "put his hands around her throat and choked her," the

---

[3] Murphy argues that the evidence supporting the aggravated assault finding was insufficient because the responding officer's testimony that Gonzalez told him the second choking impeded her breathing, to which Murphy did not object, was impermissible hearsay that cannot be used to support the probation revocation regardless of whether an objection was made. First of all, this argument fails to recognize that under the new Evidence Code, which applies in this case, "if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." OCGA § 24-8-802. Furthermore, although the officer's testimony is not necessary to our decision in this case, our Supreme Court recently explained that "in determining the sufficiency of the evidence, we consider all of the evidence that was admitted at trial, even if evidence should have been excluded." *Grier v. State*, 313 Ga. 236, 240 (2) (869 SE2d 423) (2022). Accordingly, Murphy's argument in this regard fails.

victim's doctor testified about visible injuries to the victim's neck, and photographs of the injuries were introduced); see also *Grimes*, 364 Ga. App. at 519 ("[W]e will affirm a probation revocation judgment if the record includes some competent evidence to show that the defendant violated the terms of his probation in the specific manner charged.") (citation and punctuation omitted).

2. Murphy contends that the trial court erred by revoking his probation on the bases that he was charged with new criminal offenses in Cobb County, and failed to pay court-ordered monies, even though the State did not introduce evidence in support of these findings. We agree.

In its Order of Revocation, the trial court stated that it had

adjudicated that the terms and conditions of probation had been violated as set forth in the following particulars:

General Condition No.1: Do not violate the criminal laws of any governmental unit. Whereas, on or about 03/04/2021, the defendant committed the offenses of Aggravated Assault (F) and Terroristic Threats (F) in Douglas County, GA. Whereas, on or about 01/10/2022, the defendant committed the offenses of Possession of a Schedule I Controlled Substance (F), Purchase/Possession/Manufacture/Distribution or Sale of Marijuana

(F), Driving without a Valid License (M) and Wilful Obstruction of Law Enforcement Officers (M) in Cobb County, GA.

Other Condition: Pay court ordered monies as directed. Whereas, the def currently owes $190.00 in court charges and $928.00 in fee arrears and last made a payment on 03/11/2020.

The court used the exact description of all the alleged violations listed in the Petition for Revocation of Probation. However, the record shows that the State expressly noted at the revocation hearing that it was only presenting evidence that Murphy violated his probation by committing new crimes in Douglas County, the first allegation. And, indeed, no evidence as to the other alleged probation violations was presented at the hearing. In fact, at the conclusion of the hearing, Murphy's attorney questioned whether the State was going forward with the revocation "on the technicals" because the prosecutor did not call a probation officer to testify or otherwise present evidence on that ground. The State responded: "I forgot. I guess I'll just rest and leave the fines to another probation revocation, judge." The record does not contain any evidence supporting the trial court's findings that Murphy committed new crimes in Cobb County or that he violated his probation by failing to pay court-ordered fees.

The State concedes this point, but argues that the references in the trial court's order to the alleged Cobb County offenses and failure to pay court-ordered fees are merely scrivener's errors, and we should remand this case for the trial court to correct the revocation order. We disagree that the order contains scrivener's errors, but we do agree that the case should be remanded due to the errors in the order. The cases cited by the State in support of its scrivener's error analysis involve clear sentencing discrepancies. See *Cooper v. State*, 352 Ga. App. 783, 790-791 (4) (835 SE2d 724) (2019) (remanding case for trial court to correct the notation of an incorrect statutory subsection in its sentence); *Manley v. State*, 287 Ga. App. 358, 360 (3) (651 SE2d 453) (2007) (noting that the typical remedy is to remand a case for the trial court to correct a sentencing error committed by the court clerk when entering the sentence pronounced by the trial court). The order in this case, on the other hand, involves revocation based on offenses for which there was no proof at trial. While the trial court made no reference to the alleged Cobb County offenses or violation of court-ordered fees when it orally concluded at the revocation hearing that it was revoking the balance of Murphy's probation, and, therefore, those alleged offenses likely played no role in the trial court's decision to revoke the balance of Murphy's probation, this is not an

11

assumption we are willing or able to make given the trial court's written order. "[A] trial court's written order prevails over any oral conclusions made by a judge during a hearing." *Doe v. State*, 347 Ga. App. 246, 255 (4) (819 SE2d 58) (2018).

Accordingly, "[b]ecause the revocation of probation is a matter within the discretion of the trial court, we vacate the trial court's order and remand this case to the trial court in order that it may consider in its discretion what penalty to impose" based on the State's submission of evidence solely on the new offenses that occurred on March 4, 2021, in Douglas County. *Brown v. State*, 294 Ga. App. 1, 6 (3) (668 SE2d 490) (2008) (vacating and remanding probation revocation case with instruction for the trial court to consider what penalty to impose where the evidence supported only that the appellant committed one new crime and the trial court found that the evidence supported revoking the appellant's probation based on the commission of two new crimes); see also *Dillard v. State*, 319 Ga. App. 299, 301 (735 SE2d 297) (2012) (remanding probation revocation case for clarification given the "discrepancies among the allegations of the petition, the trial court's oral announcement of its decision, the parties' understanding of the trial court's ruling, and the written judgments"); *Mann v. State*, 285 Ga. App. 39, 43 (2) (645 SE2d 573) (2007) (vacating

12

and remanding a probation revocation case with instruction for the trial court to consider whether to revoke the balance of the defendant's probation based on the only violation sufficiently proven or impose a lesser penalty instead).

3. Murphy asserts that the trial court violated his due process and statutory rights by not conducting revocation proceedings reasonably soon after his arrest. Specifically, Murphy argues that he waited over a year for a hearing on the petition to revoke his probation, and there is no justification in the record for the delay. Murphy has failed to demonstrate reversible error in this regard.

As we stated previously, this Court generally "will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court[;]" however, we review questions of law de novo. (Citation and punctuation omitted.) *Grimes*, 364 Ga. App. at 519. Here, we review de novo the question of whether the timing of the hearing violated Murphy's due process and statutory rights.

The record in this case shows that the petition to revoke Murphy's probation was filed on January 19, 2022, and, according to that document, the case was originally set for a show cause hearing on February 16, 2022.[4] On January 20, 2022, the Douglas

---

[4] There is no indication in the record why this hearing was not held.

13

County Public Defender's Office entered an appearance on behalf of Murphy, and on February 10, 2022, a warrant for Murphy's arrest was filed. Subsequently, on February 22, 2022, Christy Draper — Murphy's counsel at his probation revocation hearing — entered a notice of substitution of counsel. Draper requested leaves of absence for May 26-27, 2022; June 2-13, 2022; July 19-30, 2022; August 29-September 9, 2022; October 3-7, 2022; October 24-26, 2022; November 3-4, 2022; November 21-23, 2022; December 19, 2022-January 4, 2023; and March 2-6, 2023. The revocation hearing took place on February 6, 2023, and Murphy's probation was revoked on February 7, 2023. There is no evidence in the record that Murphy requested that a hearing be scheduled prior to February 6, 2023, that he raised this due process issue in the trial court, or that a hearing could have been scheduled for an earlier date based on the trial court's workload. Additionally, Murphy has failed to cite any Georgia case law addressing this issue.

In support of his argument that the delay in this case violated his rights, Murphy relies on *Morrissey v. Brewer*, 408 U. S. 471 (92 SCt 2593, 33 LE2d 484) (1972), in which the Supreme Court found, in the context of a parole violation, that "due process would seem to require that some minimal inquiry be conducted . . . as

promptly as convenient after arrest while information is fresh and sources are available." Id. at 485 (III) (a). The Court further stated that a parole revocation hearing must occur "within a reasonable time after the parolee is taken into custody [and that] [a] lapse of two months . . . would not appear to be unreasonable." Id. at 488 (III) (b). Specifically, the Court noted that "[w]hat is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [probationer's] behavior." Id. at 484 (II). In so deciding, the Supreme Court specifically stated that it was the responsibility of each State to write a code of procedure addressing the issue, and, indeed, Georgia has done so.

OCGA § 42-8-38 provides for the arrest of probationers who violate the terms of their probation and for a hearing on the matter. Subsection (a) states, generally, that a probation officer who believes a probationer has materially violated the terms of his probation "may arrest the probationer without warrant" and bring the probationer before the trial court. Subsection (b) provides:

> The court, upon the probationer being brought before it, may commit the probationer or release the probationer with or without bail to await further hearing, or it may dismiss the charge. If the charge is not

dismissed at this time, the court shall give the probationer an opportunity to be heard fully at the earliest possible date. . . .

OCGA § 42-8-38 (b). What constitutes "within a reasonable time" or "at the earliest possible date" depends on the circumstances of the case. For example, in *Anderson v. State*, 166 Ga. App. 521 (304 SE2d 747) (1983), we held that "[a]bsent special circumstances, . . . 30 days is an entirely reasonable time period between petition and hearing, for the sake of both the state and the offender."

While it does not appear that this Court has been presented with a case where the delay between the probation revocation petition and the hearing on the petition has been as lengthy as it was in this case, Murphy has not met his burden of demonstrating that the delay violated his due process or statutory rights. See *Bunn v. State*, 284 Ga. 410, 411 (1) (667 SE2d 605) (2008) (noting that the burden is on the defendant to show that a delay violated his due process right). It is well-settled that "a probationer facing revocation is not entitled to the full panoply of constitutional due process rights which attach to an accused in a criminal prosecution." *Meadows v. Settles*, 274 Ga. 858, 862 (4) (561 SE2d 105) (2002). As the United States Supreme

Court stated in *Morrissey*, due process in parole revocation proceedings merely requires:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . .; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U. S. at 489 (III) (b); accord *Johnson v. Boyington*, 273 Ga. 420, 421-422 (541 SE2d 355) (2001). These requirements were extended to probation revocation proceedings in *Gagnon v. Scarpelli*, 411 U. S. 778, 782 (II) (93 SCt 1756, 36 LE2d 2d 656) (1973).

Here, Murphy failed to request an earlier hearing or raise any due process issue in the trial court. See *Henderson v. State*, 310 Ga. 231, 237 (2) (c) (850 SE2d 152) (2020) (noting in a speedy trial context that in examining the weight to assign the "assertion-of-the-right" factor, courts should consider the "timing, form, and vigor of the accused's demands to be tried immediately") (citation and punctuation

17

omitted). Additionally, there is no evidence that a hearing could have been scheduled for an earlier date based on the trial court's workload, and much of the delay may have been attributable to requests for absences filed by Murphy's counsel. See *Williams v. State*, 290 Ga. 24, 26 (2) (717 SE2d 640) (2011) (holding in a speedy trial context that when a delay is caused by the accused, the State should not be penalized). Accordingly, we fail to see how the delay constitutes a due process or statutory violation under the circumstances presented here.

More importantly, Murphy has not demonstrated that he was prejudiced as a result of any delay. See *Henderson*, 310 Ga. at 239 (2) (d) (noting in a speedy trial context that a defendant has the burden of showing prejudice because of any delays). Murphy does not claim that any information or sources were unavailable due to the delay, see *Morrissey*, 408 U. S. at 485 (III) (a), and the trial court revoked the remainder of Murphy's probation based on the evidence presented at the revocation hearing. This claim lacks merit.

4. Finally, Murphy argues in his appellate brief that the trial court erred in "failing to make specific findings of fact supporting its order revoking the balance of [his] probation." But in his application for discretionary review, see OCGA § 5-6-35

(a) (5), Murphy did not raise this argument or make any mention of specific findings by the trial court. "An application for discretionary review must enumerate the errors to be urged on appeal, OCGA § 5-6-35 (b), and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application." (Punctuation and footnote omitted.) *Zekser v. Zekser*, 293 Ga. 366, 369 (2) (744 SE2d 698) (2013). "In cases in which an appellant has attempted to raise additional errors beyond the limited scope of discretionary review — whether limited only by the enumeration of errors in the application or limited further by the express direction of the Court — we have declined to consider those additional claims of error." Id; accord *Lutz v. Lutz*, 302 Ga. 500, 502 (1) (807 SE2d 336) (2017) (holding that when a party "did not raise this issue in his application for discretionary review … it is not properly before us for review"). By failing to complain in his application for discretionary review about the lack of specific findings by the trial court, Murphy has forfeited any appellate review of that issue, and we decline to consider this additional enumeration of error.

In summary, we affirm the trial court's finding that Murphy committed new offenses in Douglas County on March 4, 2021, but vacate the trial court's order

because it indicates that Murphy also committed other probation violations for which the State did not provide evidence at the revocation hearing. This case is remanded with direction that the trial court consider in its discretion what penalty to impose based strictly on Murphy's commission of the Douglas County offenses.

*Judgment affirmed in part and vacated in part, and case remanded with direction.*

*Mercier, C. J., and Miller, P. J., concur.*