**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 23, 2021**

# In the Court of Appeals of Georgia

A21A1179. JACOBS v. THE STATE.

McFADDEN, Presiding Judge.

In this discretionary appeal, Alfred Lee Jacobs challenges the trial court's order revoking his probated sentence. The trial court revoked his probation after finding that Jacobs had violated a banishment condition. The undisputed evidence showed and the state conceded that Jacobs was brought into the banishment area involuntarily. Because the state did not show by a preponderance of the evidence that Jacobs wilfully remained there, we reverse.

1. *Facts and procedural history.*

"A court may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or

violations alleged." OCGA § 42-8-34.1 (b). The burden is on the state to make the necessary showing. *Bowen v. State*, 242 Ga. App. 631, 633 (531 SE2d 104) (2000). While we affirm a decision to revoke probation "unless there has been a manifest abuse of discretion on the part of the trial court," *Caldwell v. State*, 327 Ga. App. 471, 472 (758 SE2d 325) (2014) (citation and punctuation omitted), it is an abuse of discretion for the trial court to revoke probation if the state fails to meet its evidentiary burden. See *Hunt v. State*, 358 Ga. App. 897, 899 (856 SE2d 467) (2021); *Bowen*, supra. Evidence is sufficient to support a probation revocation "if the record includes some competent evidence to show that the defendant violated the terms of his probation in the specific manner charged. . . ." *Caldwell*, supra.

The record shows that, after serving nearly fourteen years in prison for child molestation, Jacobs was released from prison in early July 2019 to serve the remaining five years of his sentence on probation. He was subject to a condition of banishment from a section of the state that included Coffee County. Later that month, his probation officer petitioned the trial court to revoke Jacobs's probation on the ground that Jacobs "was found to be in violation of his banishment condition, when he was located at [a specific address in Coffee County] after being notified [two days earlier] that he had 48 [hours] to leave his area of banishment."

2

At a hearing on the revocation petition, the trial court heard testimony from Jacobs, his probation officer, and his nephew. That testimony, viewed in the light most favorable to the trial court's ruling, showed that after Jacobs was released from prison, he met with his probation officer in Tifton, Georgia. The officer instructed Jacobs to register as a sex offender with the Tift County Sheriff's Department. But when Jacobs went to the sheriff's office, law enforcement officers transported him to Coffee County against his will.

Jacobs spent 48 hours in the Coffee County jail before he was taken to the home of his nephew, who lived in the county. His probation officer told him that he had 48 hours to leave the banishment area. The probation officer believed that Jacobs, a diabetic, had options other than walking out of the banishment area. He testified at the hearing that "[i]t would be quite a walk" for Jacobs to do so and he agreed that the temperature at the time was "about a hundred degrees."

Instead, the probation officer assumed that Jacobs's nephew could transport him out of the banishment area. But the nephew, while willing to drive Jacobs out of the area, could not do so by the 48-hour deadline due to his work schedule. Jacobs had no money to hire someone else to drive him out of the area, and under the conditions of his probation he could not hitchhike or work in the area to earn money.

3

Jacobs asked the officer what would happen if he did not leave and the officer replied that he would be arrested and a probation revocation hearing would be scheduled. Jacobs told the officer that "he would be right there [at his nephew's house] waiting on [the officer to come pick [him] up . . . when 48 hours expired." Forty-eight hours later, the probation officer returned to the house and arrested Jacobs.

After the evidentiary hearing, the trial court granted the probation-revocation petition. Jacobs moved for a new trial, and the trial court denied his motion without express findings of fact. We granted Jacobs's application for discretionary appellate review.

2. *Analysis.*

To establish a probation violation, the state generally must show "some voluntary act on the part of the probationer." *Gray v. State*, 313 Ga. App. 470, 473 (2) (722 SE2d 98) (2011). In other words, the state must show that the probationer's "own actions" were the cause of the probation violation. Id. For example, in *Gray* we held that a probationer was not in willful and voluntary violation of a probation condition requiring his completion of a drug treatment program where he was dismissed from the program for a reason outside of his control. Id.

4

The state concedes that Jacobs did not enter the banishment area voluntarily and that it did not allege that he violated his probation for that reason. See generally *Ponder v. State*, 341 Ga. App. 276, 278 (1) (800 SE2d 19) (2017) (probation can only be revoked for reason alleged in state's petition). Indeed, at the probation revocation hearing the state argued to the trial court: "No one faults [Jacobs] for how he got here. He was, apparently, kidnapped by Tifton and dumped out over here for some reason." Instead, the state argues that the evidence showed that Jacobs voluntarily remained in the banishment area after the 48-hour time period expired. But there is no evidence that Jacobs had the ability to leave the area within that time frame.

The state points to Jacobs's statement to the probation officer that he would be at his nephew's house at the end of 48 hours and argues that this should be construed as evidence of Jacobs's intent to remain in the banishment area. But notwithstanding his intent, without evidence that Jacobs *could* have removed himself from the banishment area within the time frame imposed upon him, there is no evidence that his "own actions" caused the probation violation. See *Gray*, 313 Ga. App. at 473 (2).

The state also argues that the trial court, as factfinder, was entitled to disbelieve Jacobs's testimony about his medical condition and lack of financial means. This is true. But such disbelief alone will not supply a missing element so as to satisfy the

5

state's evidentiary burden. See *Hunt v. State*, 358 Ga. App. 897, 899-900 (856 SE2d 467) (2021). Moreover, the probation officer also testified to some of these facts.

The state asserted at the probation revocation hearing that Jacobs's probation should be revoked because he could have walked out of the banishment area within 48 hours. But Jacobs's probation officer did not expect that of him, and there is simply no evidence showing that it would have been possible for Jacobs to do so. Consequently, the state did not meet its burden of showing that Jacobs's continued presence in the banishment area was voluntary, and the trial court abused his discretion in revoking Jacobs's probation for that reason. See *Gray*, 313 Ga. App. at 473-474 (2).

*Judgment reversed. Senior Appellate Judge Herbert E. Phipps concurs. Rickman, C. J. concurs fully and specially.*

A21A1179. JACOBS v. THE STATE.

RICKMAN, Chief Judge.

I concur fully with the majority opinion that the trial court's order revoking Jacobs's probated sentence must be reversed. I write separately to highlight the fact that the government's role in Jacobs's probation violation makes this case both troubling and unique; as a result, I question whether it falls squarely within our jurisprudence governing traditional probation revocation cases, and I caution against using the analysis employed by the majority – namely, whether Jacobs had the ability to cure the probation violation – to cases in which a probationer *voluntarily* violates a probationary term.

Upon his release from jail, Jacobs fully complied with the banishment terms of his probation. Then, in the words of the prosecutor, Jacobs was "kidnaped"[1] by law enforcement officers from Tift County and "dumped" back into Coffee County. Given these facts, I question whether the proper focus of our inquiry should be if Jacobs had the means to (again) voluntarily leave Coffee County within the 48-hour time line dictated by his probation officer, and further question whether there was any onus on the government to aid Jacobs in curing the violation that its own actors created. After all, "[t]he function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime." *Wagner v. State*, 220 Ga. App. 71, 72 (467 SE2d 385) (1996).

Thus, while I readily admit that the majority does its best to square these facts with the existing case law, I suspect our jurisprudence has simply never contemplated a probation revocation proceeding against a compliant and otherwise unwitting probationer for a violation created solely by law enforcement officers. I caution that nothing in the majority opinion should be read to imply that the State generally has

---

[1] It is impossible to tell from the paper record whether the prosecutor's verbiage was meant in all seriousness; regardless, his use of the word makes clear that, at a minimum, Jacobs did not choose to return to Coffee County.

2

the burden of proving that a probationer who voluntarily violates a banishment condition has the means to remove himself or herself from the banished location.

Finally, I believe in and highly respect the principles of judicial restraint and am generally mindful to avoid extraneous commentary on matters beyond the legal analysis of issues presented to this Court. Nevertheless, I feel compelled to mention that as a former prosecutor and current judge, I find it perplexing, to put it mildly, that at no time on the record before me did the prosecutor nor the trial court even pause to consider whether the fact of Jacob's "kidnap[ing]" and forced probationary violation by law enforcement officials should, at the very least, operate as an obstacle to re-incarcerating him for being present in a county from which he had been banished.